218 P.3d 1038

**Christine MOUSA, as representative of Samir Mousa, deceased, Plaintiff/Appellant,**

v.

**Fadi SABA and Jane Doe Saba; Tejinder Glamour and Jane Doe Glamour; Girish B. Patel and Jane Doe Patel; Arizona Funds, LLC, a Florida limited liability company, Defendants/Appellees.**

No. 1 CA–CV 08–0276.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 20, 2009.

Rowley Chapman Barney & Buntrock, Ltd. By Shane D. Buntrock, Jordan K. Rolfe, Mesa, Attorneys for Plaintiff/Appellant.

Kutak Rock, LLP By Douglas H. Allsworth, Paige A. Martin, Jennifer L. Kraham, Scottsdale, Attorneys for Defendants/Appellees.

## OPINION

JOHNSEN, Judge.

¶ 1 Under Arizona Revised Statutes ("A.R.S.") section 32–2122 (2008), one may not act as a real estate broker without a license. At issue in this case is an alleged contract for the performance of several services, some of which plainly fell within the licensing requirement and some of which arguably did not. In a suit to recover compensation allegedly due under the contract, the superior court entered summary judgment for the defendants, ruling that A.R.S. § 32–2152(A) (2008) precluded recovery. We hold that when a contract is illegal in part but not divisible, a party may recover in unjust enrichment for performing the portion of the contract not prohibited by law. Accordingly, we affirm in part and reverse, vacate and remand in part.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Christine Mousa, as representative of Samir Mousa ("Mousa"), appeals from the judgment entered in favor of Arizona Funds, LLC, a Florida limited liability company, and three of its members, Fadi Saba, Tejinder Glamour and Girish B. Patel (collectively, "Arizona Funds").

¶ 3 In November 2004, Mousa, Saba, Glamour and Patel met with a real estate broker to discuss purchasing some Arizona property for investment. According to Mousa, the Arizona Funds members discussed compensating him for his services in connection with the purchase and resale of the property and agreed to pay him $4,000 per month, all expenses, and 1.75 percent at the close of the purchase of the property.

¶ 4 On behalf of Arizona Funds, Mousa began to solicit real estate brokers to assist in finding suitable property in Phoenix. In December 2004, Mousa and real estate broker Randy Shell traveled to Florida to meet with Arizona Funds. Shell presented several Phoenix-area properties available for investment. Mousa recommended purchasing a particular piece of undeveloped property ("the Property") in Chandler, which Arizona Funds purchased in March 2005 for $4,536,537. Shell provided all information to Arizona Funds through Mousa, whom he credited with bringing the deal together. Mousa handled the ALTA surveys, the environmental requirements, tax issues and other due diligence on the Property and acted as intermediary between the broker and the lender. At closing, Mousa received $37,426.43 from Shell's company out of the broker's commission.

¶ 5 Soon after the purchase, Arizona Funds put the Property up for sale. The members decided to sell the Property without using a broker. Mousa advised the members about the market value of the Property. He engaged counsel for the company and spoke with him about posting a "For Sale by Owner" sign on the Property, which the attorney did; the sign listed Mousa's cell phone number. Mousa received a number of telephone inquiries about the Property. He prepared a flier about the Property with his email address, which he sent to prospective buyers. Mousa forwarded all inquiries to the members and did not himself negotiate the price of the Property with any prospective buyer.

¶ 6 On April 18, 2005, Mousa faxed Saba a plan for his compensation, requesting that Saba, who was president of Arizona Funds, sign and return the agreement. Under the proposed plan, Arizona Funds would pay Mousa a specific amount per transaction at closing for each property purchased, a percentage of the gross profit upon the sale of the property and all expenses incurred. Attached was a list of services Mousa's company offered to perform in connection with real estate transactions, including searching for investment property; researching the property; making recommendations; negotiating pricing; presenting the offers to buy and sell; reviewing the purchase contract, making necessary changes and presenting it to counsel; ensuring timely compliance with contractual requirements; coordinating and following through with respect to the appraisal, the title company, zoning, property valuation, water rights and environmental assessments; keeping parties informed; coordinating communications among lender, title company, buyer and seller; screening the financial qualifications of potential buyers; and coordinating the closing. Arizona Funds did not sign Mousa's proposed compensation agreement.

¶ 7 On May 16, 2005, Saba executed a notarized document by which he authorized Mousa "to handle [Arizona Funds'] corporate issues in the state of Arizona and the county."

¶ 8 On August 16, 2005, Mousa sent another compensation plan to Arizona Funds. In it Mousa agreed to an offer purportedly made on August 14 of five percent of the gross profit when the Property was sold and immediate payment to Mousa of $37,500 and monthly payments of $4,000 per month effective September 1 as advances against the five percent. In response, Saba directed Mousa to stop all activities regarding the Property. Later, however, Saba authorized Mousa to continue work on behalf of the company. On November 18, 2005, Mousa provided an expense reconciliation that referred to an offer to purchase the Property. By email on November 27, 2005, Saba responded that Arizona Funds was unhappy with the offer and suggested Mousa and Arizona Funds dissolve their relationship. He again instructed Mousa to cease any activities on behalf of the company.

¶ 9 On April 11, 2006, counsel for Mousa sent a letter to Arizona Funds asserting the parties had entered into an agreement in November 2004 by which Mousa was to be paid 1.75 percent of the purchase price of the Property as compensation for finding the Property and handling all aspects of its acquisition. The letter further asserted an agreement to compensate Mousa in the amount of $4,000 per month from September 2004 until the Property sold for his "continued services in managing the property, presenting the property for sale to a buyer, and negotiating the sale transaction." The letter also claimed the parties had agreed that Mousa would receive five percent of the gross profit when the Property sold. The letter sought execution of a compensation agreement that represented that Arizona Funds had engaged Mousa "to identify, acquire, manage, assist, represent and negotiate the purchase and sale of real estate in Arizona for purposes of investment."

¶ 10 Having received no satisfactory response, Mousa filed suit against Arizona Funds and its members, alleging breach of contract, breach of joint venture agreement, constructive trust, equitable lien and unjust enrichment. Arizona Funds moved to dismiss on the ground that the services for which Mousa was seeking compensation required a real estate salesperson's or broker's license and that under A.R.S. § 32–2152, Mousa could not bring such a claim because he lacked either license. The superior court granted the motion to dismiss with regard to Mousa's claim for a commission on the company's purchase of the Property, but denied the remainder of the motion.

¶ 11 Discovery proceeded in due course. At his deposition, Mousa testified that the list of services he provided with his proposed compensation plan did not represent services he actually provided to Arizona Funds, but was a "standard list of services" offered by his consulting company. He testified he searched for and found investment property for Arizona Funds, researched that property, researched county records, relayed information and gave advice to the members. He denied negotiating any prices and asserted

he had no authority to accept or reject any offer made to Arizona Funds.

¶ 12 Mousa further testified that once Arizona Funds had purchased the Property and put it up for sale he monitored the Property and advised when something needed to be done. For example, Mousa alerted Arizona Funds about renewing the Property's agricultural tax status and handled renewing a lease of the Property. Mousa testified he believed he had authority from the company to make decisions on those matters and, for example, whether to hire lawyers, surveyors or appraisers for issues arising with the Property.

¶ 13 Arizona Funds moved for summary judgment, again arguing Mousa's claims were barred because he lacked a real estate license. At oral argument, the court asked whether the entire amount Mousa sought would be barred if the court concluded that some but not all of his activities required a license. After oral argument, Mousa filed a memorandum arguing that even if some of his activities required a real estate license, he should be able to recover for the other services he performed for the company.

¶ 14 The superior court granted Arizona Funds' motion for summary judgment, reasoning as follows with respect to the license requirement:

> The statute is quite broad, and includes one who receives compensation from another when he "assists or directs in the procuring of prospects" or "assists or directs in the negotiation of any transaction." Plaintiff's activities fit squarely in this definition. Moreover, ... in April of 2006, Plaintiff sent Defendants a proposed "Compensation Agreement" which described Plaintiff's services as being "to identify, acquire, manage, assist, represent and negotiate the purchase and sale of real estate." ... Clearly, Plaintiff was engaged in activities that require a license pursuant to A.R.S. § 32–2101.

The court also rejected Mousa's argument that he should be paid because Arizona Funds agreed to compensate him:

> The Court is mindful of the fact that there is strong evidence that the parties did have an agreement for Plaintiff to be compen-

sated and Defendants are attempting to avoid payment by raising a technical defense. However, the Court believes that Plaintiff's claims are barred by the plain language of the statute.

The court entered formal judgment in favor of Arizona Funds and awarded it $20,000 in attorney's fees. Mousa timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### A. Legal Principles.

¶ 15 Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the superior court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). We review the decision on the record made in the trial court. *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App.1994).

¶ 16 It is unlawful in Arizona to act in the capacity of a real estate broker or salesperson without a license. A.R.S. § 32–2122(B). Activities that require a license include those in which

a person ... who, for another and for compensation:

* * *

(b) Offers to sell, exchange, purchase, rent or lease real estate or timeshare interests.

(c) Negotiates or offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate or timeshare interests.

(d) Lists or offers, attempts or agrees to list real estate or timeshare interests.

* * *

(i) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate or timeshare interests.

(j) Assists or directs in the negotiation of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate or timeshare interests....

A.R.S. § 32–2101(47). The licensing requirement does not apply to:

2. A person holding a valid power of attorney that is being used for a specific purpose in an isolated transaction and not as a method of conducting a real estate business.

* * *

8. One natural person who acts as a property manager for one nonresidential income property ... who is employed by the owner ... to perform the duties customarily associated with that employment.

A.R.S. § 32–2121(A)(2), (8) (2008).

¶ 17 A person engaging in activities requiring a real estate license may file an action to recover compensation only if the complaint alleges that the person was a qualified licensed broker or salesperson at the time the claim arose. A.R.S. § 32–2152(A). The purpose of the licensing statutes is to protect the public from unscrupulous and unqualified persons and to make unavailable judicial relief to recover compensation for actions taken in violation of the law. *Realty Executives, Inc. v. Northrup, King & Co.*, 24 Ariz.App. 400, 402, 539 P.2d 514, 516 (1975); *Bonasera v. Roffe*, 8 Ariz.App. 1, 2, 442 P.2d 165, 166 (1968).

### B. Mousa May Not Recover Compensation for Performing the Services of a Real Estate Broker.

¶ 18 In arguing the superior court erred in concluding that his consulting and management services required a real estate license, Mousa contends he was performing "consulting services," which are not among

the services listed in A.R.S. § 32–2101. To determine whether Mousa was required to have a real estate license, however, we must look at the actual tasks he performed, not his characterization of them. *See, e.g., Whitaker v. Ariz. Real Estate Bd.*, 26 Ariz.App. 347, 548 P.2d 841 (1976) (determining whether a business fell within the meaning of the broker statute by analyzing its activities).

¶ 19 Mousa testified that when Arizona Funds was discussing selling the Property, the members asked Mousa to "be their man" in Arizona. Mousa described his role as "communicating and monitoring and managing the progress of the market as well as the value and the—eventually the progress of selling the property." He explained that part of his "consulting" work involved advising the members on what price to set for the sale of the Property. As noted, his telephone number was on the for-sale sign, he took numerous calls from prospective buyers, he prepared a flier to send to prospective buyers and he relayed any offers he received to Arizona Funds.

¶ 20 As the superior court noted, under Arizona law, the real estate activities requiring a license are very broad. *See* A.R.S. § 32–2101(47). Many of the actions Mousa acknowledges he performed in procuring prospects calculated to result in sale of the Property clearly fall within section 32–2101(47)(i). Mousa was required to have a license for those services, and he may not maintain an action for compensation for those services in the absence of a license.

¶ 21 Mousa argues that he was only a "middleman" or "finder," and emphasizes that he was not involved in negotiating a price for the Property. The statutes, however, do not except a "middleman" whose conduct otherwise falls within the tasks that one must have a real estate license to perform. Mousa argues that he did not hold himself out to be a broker, that Arizona Funds knew he was not a broker and that he offered evidence that it is a common practice in Arizona to pay non-licensed real estate consultants. Even accepting those statements as true, under the plain meaning of A.R.S. §§ 32–2101(47) and –2152, Mousa may not recover compensation for services he performed as a real estate broker.

## C. Non–Broker Services Performed by Mousa.

 ¶ 22 Mousa argues that two of the statutory exceptions to the licensing requirements permit him to recover for non-broker services he performed for Arizona Funds.

¶ 23 He first contends that when he exercised the power of attorney he received from Arizona Funds to act on behalf of the company concerning tax and other management issues, his activities were exempt from the licensing requirements under A.R.S. § 32–2121(A)(2). The statute excepts from the licensing requirement "[a] person holding a valid power of attorney that is being used for a specific purpose in an isolated transaction and not as a method of conducting a real estate business." A.R.S. § 32–2121(A)(2). Even if this provision might otherwise apply to some of the tasks Mousa performed for Arizona Funds, the record reveals no genuine dispute that he used the power of attorney "as a method of conducting a real estate business." That Mousa was conducting a real estate business within the meaning of the statute was made plain by the list of services Mousa sent to Arizona Funds in April 2005 to illustrate how he and his company could help market the Property. *See* ¶ 6, *supra*. Therefore, under the specific facts of this case, the licensing exception for acts performed using a power of attorney does not apply.

 ¶ 24 Mousa also argues that some of the services he performed for Arizona Funds were property management services that fell within an exception to the licensing law. Section 32–2121(A)(8) excepts from the licensing requirement a person who acts as a property manager for a nonresidential income property and is employed by the owner to perform management duties. Mousa argues that within this exception, he renewed the agricultural status of the Property when it was about to expire, renewed the lease of the Property and hired certain professionals to perform services concerning the Property. Although, as Arizona Funds points out, Mousa presented little evidence of these so-called management activities, the record contains some evidence to support his contention that he engaged in activities unrelated to the sale of the Property that fell within the property

management exception to the licensing requirements.[1]

■ ¶ 25 Mousa argues that under the agreement he alleges, Arizona Funds contracted to compensate him for property management services and the superior court erred in not severing that agreement from the overall contract.[2] In Arizona, even if one part of a severable contract is void, the court may enforce the remainder of the contract. *Hackin v. Pioneer Plumbing Supply Co.,* 10 Ariz.App. 150, 157, 457 P.2d 312, 319 (1969) ("A lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time for the same consideration."). A contract may be severed, however, only if its terms clearly show the parties intended it to be severable. *Olliver/Pilcher Ins., Inc. v. Daniels,* 148 Ariz. 530, 533, 715 P.2d 1218, 1221 (1986). In determining whether a contract is severable, the parties' intent is most important:

> The intention of the parties, as determined from the contractual language and the subject matter, is of primary importance; if it were intended to take the whole or none, the contract is not divisible.... Another indicium is whether the consideration for two or more promises is entire or if it is capable of apportionment among the several promises.

*Kahl v. Winfrey,* 81 Ariz. 199, 203–04, 303 P.2d 526, 529 (1956).

¶ 26 Mousa argues Arizona Funds' promise to pay him a monthly fee while the Property was on the market evidenced the parties' intent that he would be compensated for non-broker services separate from any commission due him for assisting in the ultimate sale of the Property. But in response to the motion for summary judgment, Mousa offered no evidence to support his contention that Arizona Funds agreed to a spe-cific amount he would be paid for any non-broker services he might perform on a monthly basis. He argued Arizona Funds agreed to pay him $4,000 per month as compensation for "consulting services" but provided no evidence of an agreement to pay him any specific amount for any specific *non-broker* services.[3] Accordingly, the record lacks evidence sufficient to create a genuine issue of fact that under the agreement Mousa alleged, the parties intended that Mousa would perform and be paid for non-broker services separate from any broker services he might perform.

¶ 27 Mousa argues that even if the agreement he alleges is not severable, he should be entitled to recover against Arizona Funds under a claim for unjust enrichment. It is plain that Mousa may not recover in unjust enrichment for broker services he performed for Arizona Funds. As noted, the law does not permit Mousa to act as a real estate broker, and he may not maintain any cause of action to recover compensation for having performed broker services. *See Landi v. Arkules,* 172 Ariz. 126, 136, 835 P.2d 458, 468 (App.1992) (equitable relief is not permitted when contract is unenforceable because it is illegal or violative of public policy).

■ ¶ 28 We have been directed to no authority, however, for the proposition that under the circumstances presented here, one may not recover in unjust enrichment for providing non-broker services simply because one contracted at the same time also to perform broker services without a license. To the extent that Mousa performed any non-broker services for Arizona Funds, A.R.S. § 32–2122(B) did not prevent him from performing those services, and A.R.S. § 32–2152(A) does not prevent him from suing to recover the reasonable value of those services. *Butch Randolph & Assocs., Inc. v. Int'l Fid. Ins. Co.,* 212 Ariz. 550, 136 P.3d

1. Arizona Funds argues that we should strike certain evidence Mousa offers on appeal because it was not in the superior court record. Without resolving that issue, we note there is sufficient other evidence in the superior court record to create a genuine issue of fact that Mousa performed some property management services with respect to the Property.

2. We will consider this issue over Arizona Funds' objection because, even though Mousa did not raise it in response to the summary judgment motion in the superior court, the court itself raised the issue during oral argument.

3. In his deposition, Mousa testified his consulting services included giving advice about whether the Property was a good investment, how to sell the Property and at what price, and whether Arizona Funds should accept offers to buy the Property.

232 (App.2006), is instructive. In *Butch*, an unlicensed subcontractor sued to recover the value of materials it furnished for a park project. In affirming judgment in the subcontractor's favor, the court held that although A.R.S. § 32–1153 (2008) generally bars recovery by an unlicensed contractor, the licensing requirement does not apply to a supplier of materials. *Id.* at 552, ¶ 9, 136 P.3d at 234. Although the case is not directly on point because the subcontractor there arranged for a licensed contractor to install the equipment, it supports the conclusion that a licensing requirement does not bar a claimant that lacks a license from recovering for work falling outside the license requirement.

■ ¶ 29 To recover on a claim for unjust enrichment, a claimant must show (1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law. *Cmty. Guardian Bank v. Hamlin*, 182 Ariz. 627, 630, 898 P.2d 1005, 1008 (App. 1995); *see also W. Corr. Group, Inc. v. Tierney*, 208 Ariz. 583, 590, 96 P.3d 1070, 1077 (App.2004) (quantum meruit recovery is available when services are performed pursuant to an unenforceable contract). While the contract Mousa alleged could be severed only upon a showing that the parties intended to create separate and distinct corresponding respective obligations, Mousa may satisfy the first two elements of an unjust enrichment claim by showing that he performed non-broker services that enriched Arizona Funds and impoverished himself.[4] Because the record reveals that Mousa performed some non-broker services for Arizona Funds, we must reverse and vacate the judgment entered in its favor and against Mousa on that claim.[5]

## CONCLUSION

¶ 30 We conclude the superior court correctly entered summary judgment on Mou-

sa's claims arising out of the contract he alleges because those claims are barred by the licensing requirements of A.R.S. §§ 32–2101(47), –2122(B) and –2152(A). Although we affirm the judgment entered on those claims, we must reverse and vacate the judgment as to Mousa's claim for unjust enrichment arising from his performance of non-broker services for Arizona Funds, as well as the attorney's fees award, and remand for further proceedings consistent with this Opinion.

CONCURRING: DANIEL A. BARKER and MAURICE PORTLEY, Judges.

---

4. Mousa's complaint alleged a right to recover in unjust enrichment only in general terms. At oral argument on the motion for summary judgment, the focus of the parties and the superior court was on whether Mousa might recover under unjust enrichment for all of the work he did for Arizona Funds. Although Mousa did not press the more narrow scope of relief we address, the facts and legal authorities he offered in the superior court support our reasoning.

5. Because we reverse the judgment in part, we also vacate the superior court's award of attorney's fees in Arizona Funds' favor, without prejudice to the superior court's further consideration of the issue of fees at the conclusion of this matter.