235 P.3d 285

Alex RAMSEY, an individual, Plaintiff/Appellant,

v.

YAVAPAI FAMILY ADVOCACY CENTER, an Arizona entity; Larayne Ness; Brenda Sheets; Yavapai Community Hospital Association, an Arizona nonprofit corporation, dba Yavapai Regional Medical Center; Judy Denton; Cappriella McQuiston, Defendants/Appellees.

No. 1 CA–CV 08–0824.

Court of Appeals of Arizona, Division 1, Department D.

July 13, 2010.

---

The Doerfler Law Firm By Christopher A. Doerfler, La Crosse, WI, Attorney for Appellant.

Grasso Law Firm PC By Robert Grasso, Jr. and Kim S. Alvarado, Chandler, Attorneys for Appellees Yavapai Family Advocacy Center and Sheets.

Broening Oberg Woods & Wilson PC By Robert T. Sullivan and Brian W. Purcell, Phoenix, Attorneys for Appellee Ness.

Anna Young PLLC By Anna C. Young, Prescott, Attorney for Appellees Yavapai Regional Medical Center, Yavapai Community Hospital Association and Denton.

## OPINION

OROZCO, Judge.

¶ 1 Alex Ramsey (Ramsey) appeals the trial court's grant of summary judgment in favor of LaRayne Ness (Ness), Judy Denton and Yavapai Community Hospital Association (collectively, Denton), Brenda Sheets (Sheets), and Yavapai Family Advocacy Center (YFAC) (collectively, Defendants).[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Ramsey and his ex-wife, A.S, were married in Idaho in 1997. Ramsey and A.S. had one child (Child). During their subsequent divorce, A.S. reported to Idaho authorities that she suspected Ramsey was sexually abusing Child. On February 6, 2003, Child was examined by a doctor who found A.S.'s suspicions of sexual abuse to be unsupported.

¶ 3 Soon after the examination, Ramsey, A.S. and Child moved from Idaho to Arizona. On September 9, 2003, A.S. took Child to Cornerstone Family Counseling (Cornerstone) to receive counseling from Sheets. At the first session, A.S. reported to Sheets that she believed Child had been sexually molested by Ramsey. After the first session, Sheets concluded that because of A.S.'s reports and Child's behavior, she "had concerns that some type of abuse may be happening."[2] On September 22, 2003, during Child's third session, Child told Sheets "that her daddy touched her" inappropriately.[3] The same day, Sheets reported to Child Protective Services (CPS) that she believed Ramsey had sexually abused Child.

¶ 4 Based on Sheets's allegations, Clyde Bentley (Bentley), a Yavapai County Sheriff's Detective, initiated a criminal investigation. Interviews and a physical examination of Child took place at YFAC. YFAC is a facility in which members of law enforcement, county attorneys and CPS assist in the investigation of child abuse, domestic assault, vulnerable adult abuse and other instances of family violence.

¶ 5 Ness, a sexual assault nurse examiner, performed a medical forensic evaluation of Child at YFAC.[4] Ness contracted with the Yavapai County Attorney's Office to perform the evaluation. At no time was Ness employed by YFAC. Ness reported that during the evaluation, Child stated that "her dad" had touched her inappropriately. As part of the examination, Ness took colposcopic photos of Child. Ness's evaluation of Child led her to conclude that there was definitive evidence of sexual abuse. She forwarded her report to Bentley.

¶ 6 Bentley requested a second opinion from Denton, the nursing supervisor at Yavapai Regional Medical Center.[5] Denton reviewed the colposcopic photos taken by Ness and concluded that Child had more than likely suffered from a long history of sexual abuse "since just after her birth." Based on the photos, Denton agreed with Ness's conclusions.

¶ 7 Bentley testified before a grand jury regarding Denton's conclusions. After hearing his testimony, the grand jury indicted Ramsey on multiple criminal charges relating to sexual conduct with a minor. However, the State later voluntarily dismissed the case without prejudice. The prosecutor stated that the "Yavapai County Attorney's Office concluded that the chances of conviction were

---

1. The trial court granted summary judgment in favor of all defendants. Ramsey does not appeal the trial court's grant of summary judgment in favor of the other defendants not discussed in this opinion.

2. Ramsey argues that Sheets was not licensed to provide therapy for sexual abuse; however, at the time Sheets provided the therapy, there was no licensing requirement in Arizona. In April 2004, Sheets stated she had a bachelor's degree in elementary education, a master's degree in educational counseling and seven years' experience in the mental health field.

3. To protect the privacy of Child, we will not discuss the details of the findings of the therapists and doctors.

4. YFAC and its staff did not participate in Child's examination or any of her interviews. YFAC only provided a location for others to evaluate and interview Child.

5. Denton was not employed by YFAC. Denton contracted with the Yavapai County Attorney's Office to review Ness's report.

not high enough to warrant continued prosecution of the case."

¶ 8 Ramsey argues that part of the State's decision to dismiss the charges against him was based on a subsequent evaluation of Child performed by the State's expert, Dr. Kathryn C. (Dr. C.). Dr. C. examined Child on October 1, 2004, more than a year after Ness's original examination. Dr. C. found "no signs of acute or healed injury." Nevertheless, Dr. C. concluded that "[t]his does not preclude the possibility of sexual abuse, as many sexually abusive acts are not associated with physical injury." [6]

¶ 9 Following the State's dismissal of the charges, Ramsey filed a civil action against each appellee, alleging: (1) negligence and/or gross negligence; (2) malicious prosecution; (3) abuse of process; (4) false light invasion of privacy; (5) wrongful intrusion upon private affairs; (6) false arrest and imprisonment; (7) intentional infliction of emotional distress; (8) aiding and abetting tortious conduct; (9) defamation and defamation per se; and (10) loss of consortium. Each appellee moved for summary judgment.

¶ 10 On August 28, 2008, the trial court entered summary judgment: (1) in favor of Ness on all claims based on the immunity provided by Arizona Revised Statutes (A.R.S.) section 13-3620.J (2010); [7] (2) in favor of Denton on all claims based on the immunity provided by A.R.S. § 13-3620.J; (3) in favor of YFAC because Ramsey failed to produce evidence that would support any claim against YFAC; and (4) in favor of Sheets on claims relating to her reporting or participation in the criminal investigation based on A.R.S. § 13-3620.J. On October 23, 2008, the trial court granted summary judgment in favor of Sheets on all remaining claims, finding no evidence of malice and determining Sheets owed no duty of care to Ramsey as a non-patient parent in counseling Child.

¶ 11 Ramsey filed a timely notice of appeal and we have jurisdiction pursuant to A.R.S. §§ 12-120.21.A.1 and -2101.B (2003).

## DISCUSSION

¶ 12 Ramsey raises six issues on appeal: (1) whether A.R.S. § 13-3620.J violates the Arizona Constitution's anti-abrogation clause; (2) whether A.R.S. § 13-3620.J violates the equal protection clause of the Arizona Constitution; (3) whether a genuine issue of material fact existed regarding the reasonableness of the conclusions reported by Sheets, Ness, and Denton; (4) whether a genuine issue of material fact existed regarding the issue of malice as applied to Sheets, Ness, and Denton; (5) whether a genuine issue of material fact existed regarding YFAC's involvement; and (6) whether Sheets owed a duty to Ramsey while counseling Child. On appeal, Ness raises a cross-issue, arguing that Ramsey's claims against her are barred by the statute of limitations.

¶ 13 We review the constitutionality of statutes *de novo*. *Town of Gilbert v. Maricopa County*, 213 Ariz. 241, 245, ¶ 11, 141 P.3d 416, 420 (App.2006). When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party and the party against whom summary judgment was entered. *Mousa v. Saba*, 222 Ariz. 581, 585, ¶ 15, 218 P.3d 1038, 1042 (App.2009). We review the trial court's decision on the record before the trial court. *Id.* The existence of a legal duty is a question of law that we review *de novo*. *Clark v. New Magma Irrigation & Drainage Dist.*, 208 Ariz. 246, 248, ¶ 8, 92 P.3d 876, 878 (App.2004).

## I. Mandatory Reporting Statute—A.R.S. § 13-3620

¶ 14 The majority of Ramsey's arguments focus on Arizona's mandatory reporting statute, A.R.S. § 13-3620. Section 13-3620.A provides:

---

6. Dr. C.'s testimony was given at trial in a separate criminal case, *State v. Pacheco*, Yavapai County, No. CR 82003-0474. During the trial in that matter, Dr. C. provided the above mentioned testimony regarding her conclusions on Ramsey's criminal case.

7. Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this opinion have since occurred.

Any person who reasonably believes that a minor is or has been the victim of physical injury, abuse, Child abuse, a reportable offense or neglect that appears to have been inflicted on the minor by other than accidental means or that is not explained by the available medical history as being accidental in nature ... shall immediately report or cause reports to be made of this information to a peace officer or to child protective services in the department of economic security, except if the report concerns a person who does not have care, custody or control of the minor, the report shall be made to a peace officer only.... For purposes of this subsection, "person" means:

1. Any physician, physician's assistant, optometrist, dentist, osteopath, chiropractor, podiatrist, behavioral health professional, nurse, psychologist, counselor or social worker who develops the reasonable belief in the course of treating a patient.

¶ 15 Under the statute, individuals identified in A.R.S. § 13–3620.A.1 have a mandatory duty to report abuse when they reasonably believe a minor is being or has been abused. Individuals not falling within this definition may report suspected abuse pursuant to A.R.S. § 13–3620.F:

Any person other than one required to report or cause reports to be made under subsection A of this section who reasonably believes that a minor is or has been a victim of abuse, child abuse, physical injury, a reportable offense or neglect may report the information to a peace officer or to child protective services in the department of economic security, except if the report concerns a person who does not have care, custody or control of the minor, the report shall be made to a peace officer only.

▮ ¶ 16 Under certain circumstances, A.R.S. § 13–3620.J provides immunity from civil and criminal liability for those who report abuse:

A person who furnishes a report, information or records required or authorized under this section, or a person who participates in a judicial or administrative proceeding or investigation resulting from a report, information or records required or authorized under this section, is immune from any civil or criminal liability by reason of that action unless the person acted with malice or unless the person has been charged with or is suspected of abusing or neglecting the child or children in question.

Because an individual who acts with "malice" may still be civilly liable, A.R.S. § 13–3620.J only provides *qualified immunity.* *L.A.R. v. Ludwig,* 170 Ariz. 24, 28, 821 P.2d 291, 295 (App.1991).

## II. Constitutional Arguments

¶ 17 Ramsey argues that A.R.S. § 13–3620.J violates the anti-abrogation clause of the Arizona Constitution because it "abrogates rather than merely regulates" Ramsey's right to sue. Alternatively, Ramsey argues that A.R.S. § 13–3620.J violates the equal protection clause of the Arizona Constitution. Sheets, Ness, and Denton all contend that Ramsey's constitutional arguments should not be considered because Ramsey failed to raise them before the trial court.

### A. Equal Protection Clause

▮ ¶ 18 The record indicates Ramsey first raised his equal protection argument in his motion for reconsideration, filed after the court entered summary judgment against him. Generally, we do not consider arguments raised for the first time in a motion for reconsideration. *See Evans Withycombe, Inc. v. W. Innovations, Inc.,* 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App.2006). "One of the reasons ... is that when a new argument is raised for the first time in a motion for reconsideration, the prevailing party below is routinely deprived of the opportunity to fairly respond."[8] *Id.* In this case, the trial court did not request a response to the motion to reconsider. There-

---

8. On occasion, we have exercised our discretion to consider matters raised for the first time in a motion for reconsideration if "the facts or arguments presented were not available at the time

the [ruling] was entered." *Evans Withycombe, Inc.,* 215 Ariz. at 241 n. 5, ¶ 16, 159 P.3d at 551 n. 5. This case does not present such a circumstance.

fore, Defendants were deprived of the opportunity to respond to these arguments.

¶ 19 It is within our discretion to consider constitutional arguments that are not properly raised before the trial court. *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987); *Olson v. Walker*, 162 Ariz. 174, 181, 781 P.2d 1015, 1022 (App.1989). In exercising our discretion, we decline to consider Ramsey's equal protection argument.

### B. Anti–Abrogation Clause

¶ 20 Ramsey contends he raised his anti-abrogation argument at oral argument on the summary judgment motions. Ramsey suggests the record supports this contention because his motion for reconsideration requested that "the court clarify its ruling and supplement the record with respect to [his] claim at oral argument that the statute is unconstitutional." However, the trial court did not clarify or supplement the record. Accordingly, the only proof that Ramsey raised the anti-abrogation argument at oral argument would be found in the oral argument transcript. Ramsey "is responsible for making certain that the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal." *State ex rel. Dept. of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16, 66 P.3d 70, 73 (App.2003); ARCAP 11(b)(1) (an appellant is responsible for providing all relevant transcripts). Because Ramsey did not provide a transcript of the oral argument, we will not presume that he raised his anti-abrogation argument during oral argument. *See Fendler v. Phoenix Newspapers Inc.*, 130 Ariz. 475, 478 n. 2, 636 P.2d 1257, 1260 n. 2 (App. 1981) (stating that where an "[a]ppellant has chosen not to provide this court with a transcript of the hearing on the motion for summary judgment ... we will not presume that this issue was raised in the hearing").

---

9. We do not consider whether Sheets was a mandatory or permissive reporter under A.R.S. § 13–3620.A or F because the issue was not briefed. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491 n. 2, ¶ 6, 154 P.3d 391, 393 n. 2 (App.2007) (failure to develop and support argument waives issue on appeal); *see also* ARCAP 13(a)6 (an argument in an opening brief "shall

¶ 21 After reviewing the record, we find Ramsey did not explicitly make his anti-abrogation argument until his motion for reconsideration. Therefore, we also decline to consider Ramsey's anti-abrogation argument.

### III. Immunity under A.R.S. § 13–3620

#### A. "Reasonably Believes"

¶ 22 Ramsey argues the trial court erroneously granted summary judgment in favor of Sheets, Ness, and Denton because a genuine issue of material fact existed as to whether these defendants "reasonably believed" Child had been abused. Pursuant to A.R.S. § 13–3620.A and F, a person making a report of suspected child abuse is protected from liability only if he or she "reasonably believe[ ]" abuse has occurred. However, this "reasonably believes" requirement is not imposed on individuals receiving qualified immunity based on their "participat[ion] in a judicial or administrative proceeding or investigation resulting from a report." A.R.S. § 13–3620.J.

¶ 23 The undisputed evidence offered on summary judgment was that, as the trial court found, Ness and Denton only participated in the investigation following Sheets's initial report and did not themselves make "reports" within the meaning of the statute. Ramsey does not argue on appeal that we should treat Ness or Denton as anything other than participants in an ongoing investigation. Accordingly, the "reasonably believes" requirement imposed upon mandatory and permissive reporters is not applicable to Ness or Denton. Nevertheless, as the initial reporter of the alleged abuse, Sheets enjoys qualified immunity under the statute only if she "reasonably believe[d]" abuse had occurred.[9]

¶ 24 We have previously articulated that "reasonable grounds" is "a low stan-

---

contain ... citations to the authorities, statutes and parts of the record relied on"). Furthermore, our determination of whether a genuine issue of material fact existed as to whether Sheets "reasonably believe[d]" Child had been abused would not be affected by whether Sheets is either a permissive or a mandatory reporter.

dard." *Ludwig*, 170 Ariz. at 27, 821 P.2d at 294 (interpreting the provisions of A.R.S. § 13–3620.A and B then in effect).[10] In *Ludwig*, we concluded the trial court did not err in finding a counselor had "reasonable grounds" to report child sexual abuse. *Id.* at 26–27, 821 P.2d at 293–94. We based our decision on the public policy consideration "of encouraging people to report child abuse." *Id.* at 27, 821 P.2d at 294. Based on the facts in *Ludwig*, we cannot say the trial court erred in granting summary judgment in favor of Sheets. In *Ludwig*, the trial court found a counselor had "reasonable grounds" to believe a child had been sexually abused by her father based simply on a statement from the child's mother. *Id.* at 26, 821 P.2d at 293. In this case, Sheets relied on much more than simply A.S.'s statement that she believed Child had been sexually abused. During Child's third session, Child told Sheets "that her daddy touched her" inappropriately. As a result, we conclude there was no genuine issue of material fact as to whether Sheets "reasonably believe[d]" abuse had occurred.

¶ 25 On appeal, Ramsey argues that Sheets did not meet the "reasonably believes" requirement because "[t]he only evidence she ever had to base her opinion on was the evidence that she implanted in the child's head through improper therapeutic methods." Ramsey, however, makes this argument without citing to any evidence in the record, and we find nothing in the record that would support it. Alternatively, Ramsey contends Sheets did not meet the "reasonably believes" standard because she lacked credentials, such as licensure, and engaged in improper therapeutic techniques. As Sheets stated in her affidavit, at the time she made her report, "no licensing, certification, or particularized education was required to be a counselor in Arizona." Ramsey does not dispute this fact. Moreover, even if we accepted Ramsey's assertions that Sheets lacked qualifications and used improper therapeutic techniques, Ramsey presented no evidence that Sheets did not "reasonably be-

lieve[ ]" Child had been sexually abused. We hold that the trial court did not err in concluding Ramsey had failed to present evidence sufficient to create a genuine issue of material fact about whether Sheets "reasonably believe[d]" Child had been sexually abused.

### B. Malice

 ¶ 26 Ramsey argues the trial court erroneously granted summary judgment in favor of Sheets, Ness, and Denton because a genuine issue of material fact existed as to whether these defendants "acted with malice" in reporting and investigating the child sexual abuse allegations. Pursuant to A.R.S. § 13–3620.J, a person is entitled to immunity so long as his or her participation in either reporting or investigating child sexual abuse was done without "malice." This form of qualified immunity can only be overcome by a showing of "malice." *Id.* We presume that a person acting pursuant to A.R.S. § 13–3620 acted in good faith and with proper motives. *Ludwig*, 170 Ariz. at 28, 821 P.2d at 295. In this case, Ramsey has the burden to prove "malice."

¶ 27 Pursuant to A.R.S. § 1–215.20 (Supp. 2009), "[m]alice … import[s] a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." Ramsey has presented no evidence that Sheets, Ness, or Denton were motivated by any malice toward him. Rather, Ramsey argues that each of these defendants acted with malice because they intended to do the actions alleged and that their actions ultimately proved to be "wrong and harmful."[11] We find no support for this interpretation of "malice."

¶ 28 Ramsey cites to *Fears v. State*, in which the Arizona Supreme Court held in 1928 that "intent to do a wrongful act" is considered "merely malice in law or that which is inferred from the intentional doing of a wrongful act." 33 Ariz. 432, 436, 265 P. 600, 601 (1928). We interpret this definition

---

**10.** Section 13–3620.A and B were amended in 2003, replacing "reasonable grounds to believe" with "reasonably believes." 2003 Ariz. Sess. Laws, ch. 222, § 2 (1st Reg. Sess.).

**11.** Ramsey's use of "wrong and harmful" refers to his allegation that Defendants' actions were premised on egregious errors and caused the harm he has suffered.

to imply that the actor must have intended to do something that he or she knew to be wrong. Ramsey failed on summary judgment to offer any evidence that Sheets, Ness, or Denton acted with malice in that they intended to do something they knew to be wrong. Accordingly, the trial court did not err in granting Sheets, Ness, and Denton summary judgment based on the qualified immunity provided by A.R.S. § 13–3620.J.[12]

## IV. YFAC

¶ 29 Ramsey next argues that the trial court erred in granting summary judgment to YFAC because a genuine issue of material fact existed as to whether YFAC failed to follow its policies. The trial court granted summary judgment in favor of YFAC because it concluded that Ramsey "failed to produce evidence that would support any claim against YFAC." As the trial court correctly pointed out, "[t]here is no dispute that the only involvement of [YFAC] in this matter was to provide the facility in which examinations took place."[13]

¶ 30 Even if we accept Ramsey's argument that YFAC failed to follow its own policies, it is undisputed that YFAC nevertheless took no part in the reporting or investigating of the alleged abuse. No member of YFAC's staff participated in the investigation. It is undisputed that Ness and Denton were independent contractors, paid by the Yavapai County Attorney's Office. Moreover, Sheets had no affiliation with YFAC. Ramsey's only claim is that "[a] reasonable jury could find that YFAC, by violating its policy, proximately caused the injury to plaintiff." Ramsey, however, cites no legal or factual basis establishing any element of a negligence action. Ramsey never established that YFAC

owed a duty to him or breached a standard of care based on YFAC's minimal involvement. The trial court aptly stated, "no evidence is offered to establish any breach of duty by YFAC that was the proximate cause of injury to [Ramsey]." Because nothing in the record would support any of Ramsey's claims against YFAC, we find the trial court did not err in granting summary judgment in favor of YFAC.

## V. Sheets Owed No Duty to Ramsey

### A. Sheets Owed No Duty to a Third–Party Alleged Abuser

¶ 31 Ramsey alleges that in counseling and treating Child, Sheets destroyed his parental relationship with Child, and argues on appeal that the trial court erred in finding Sheets owed him no duty of care.[14] To maintain a negligence action against Sheets, Ramsey must first establish that Sheets owed him a duty of care. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 11, 150 P.3d 228, 230 (2007). The existence of duty is a threshold question and absent some duty, "defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct." *Id.* at 143–44, ¶ 11, 150 P.3d at 230–31.

¶ 32 Ramsey has not cited any Arizona case imposing a duty upon a counselor or therapist owed to an accused sexual abuser; instead, Ramsey suggests that we adopt the reasoning of other jurisdictions. *Montoya v. Bebensee*, 761 P.2d 285, 289 (Colo.App. 1988) (holding that "a mental health care provider owes a duty to any person, who is the subject of any public report or other adverse recommendation by that provider, to use due care in formulating any opinion upon which such a report or recommendation is

---

**12.** Because we affirm the trial court's grant of summary judgment in favor of Ness, we need not consider Ness's statute of limitations argument.

**13.** YFAC states in its answering brief that Ramsey "only specifically challenges the trial court's conclusions on the dismissal of his negligence claim." We agree with YFAC that Ramsey's arguments only apply to Ramsey's negligence claim. Ramsey's briefs failed to address the other claims. Accordingly, Ramsey has abandoned and waived his rights on appeal with respect to all remaining claims. *See Robert Schalkenbach*

*Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 17, 91 P.3d 1019, 1023 (App.2004).

**14.** Because this claim arises out of the alleged negligent counseling and treatment of Child, qualified immunity under A.R.S. § 13–3620.J does not apply. *See Ludwig*, 170 Ariz. at 28–29, 821 P.2d at 295–96. Qualified immunity under A.R.S. § 13–3620.J applies only to causes of action arising from reporting and investigating child sexual abuse, not counseling and treatment of an alleged abuse victim.

based"); *Sawyer v. Midelfort,* 227 Wis.2d 124, 595 N.W.2d 423, 431 (1999) (recognizing a duty owed by therapists to non-patients only as it applies to "the harm that arises from accusations of sexual assault"). However, we are not bound by the decisions of other states. *State ex rel. Ariz. Dep't of Revenue v. Talley Indus., Inc.,* 182 Ariz. 17, 22, 893 P.2d 17, 22 (App.1994).

¶ 33 Furthermore, our research of this issue, like the trial court's, indicates that a majority of other jurisdictions that have addressed the issue have held a counselor or a therapist owes no duty of care to an alleged sexual abuser. *Trear v. Sills,* 69 Cal.App.4th 1341, 82 Cal.Rptr.2d 281, 288 (1999) (reasoning that a therapist acting in good faith is placed "in an untenable position if a duty is imposed upon him or her toward the patient's possible abuser"); *Doe v. McKay,* 183 Ill.2d 272, 233 Ill.Dec. 310, 700 N.E.2d 1018, 1023–24 (1998) (relying on the rule that "the defendant therapist owed a duty of care to her patient only, and not to nonpatient third parties"); *Flanders v. Cooper,* 706 A.2d 589, 591–92 (Me.1998) (refusing to recognize a duty after reasoning that otherwise, a health care professional "who suspected that a patient had been the victim of sexual abuse and who wanted to explore that possibility in treatment would have to consider the potential exposure to legal action by a third party who committed the abuse").

¶ 34 In *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166, 1170–71 (2000), the Supreme Court of Pennsylvania identified the following factors in refusing to recognize a duty owed to a patient's alleged abuser:

> The foundation for any successful psychiatric treatment is trust by the patient and confidentiality in communications with the provider. In treating patients who have been subjected to sexual abuse, the therapist must be able to rely upon professional confidentiality to facilitate candid discussion. Imposing an additional duty of care upon the therapist to an alleged abuser, parent or otherwise, would certainly alter this important therapeutic relationship. Initially, such an additional duty may cause mental health professionals to avoid

providing treatment in sexual abuse cases. Also, victims of sexual abuse may be reluctant to seek treatment if confidentiality of communications is not guaranteed. Finally, such a duty would necessarily change the very nature of the therapeutic treatment in that the therapist would have to constantly evaluate conflicting duties of care to determine the appropriate manner in which treatment should proceed. Tort law considerations should not interfere with a therapist's job in this manner, particularly in the area of the psychological treatment of victims of sexual abuse. Accordingly, this factor weighs heavily against imposing a duty of care beyond that owed to a patient.

¶ 35 The Supreme Court of Connecticut reached a similar conclusion:

> We conclude that imposing a duty on mental health professionals pursuant to the plaintiff's theory of liability in the present case would carry with it the impermissible risk of discouraging such professionals in the future from performing sexual abuse evaluations of children altogether, out of a fear of liability to the very persons whose conduct they may implicate. Such a result would necessarily run contrary to the state's policy of encouraging the reporting and investigation of suspected child abuse because effective evaluation and diagnosis of children is a necessary component of discovering the abuse in the first instance. In addition, imposing such a duty creates too high a risk that, in close cases, mental health professionals would conclude that no sexual abuse had occurred because they feared potential liability to the suspected abusers, rather than because of their professional judgment that, in all likelihood, no abuse had occurred. Because "[r]ules of law have an impact on the manner in which society conducts its affairs" we conclude that the sounder judicial ruling is to hold that no such duty exists.

*Zamstein v. Marvasti,* 240 Conn. 549, 692 A.2d 781, 787 (1997) (internal citations omitted).

¶ 36 We have weighed the many policy considerations discussed in *Althaus, Zamstein,* and other cases. We agree with

the trial court that the recognition of a duty of care in this case is substantially outweighed by those considerations, including, as the trial court noted, "the importance of the availability of treatment for victims of sexual abuse and of allowing and encouraging therapists to evaluate and treat them without fear of potential liability to suspected abusers." Accordingly, we hold that in treating an alleged victim of abuse, a health care professional owes no duty of care to an alleged third-party abuser.

### B. Sheets Owed No Other Duty to Ramsey

¶ 37 Ramsey argues alternatively that even if we decide therapists "owe no duty to third parties, that protection should not extend to Sheets, because Sheets was not a therapist." Ramsey cites no legal or factual basis for this argument. He states only that Sheets "was a fraud, lacking licensure, education, credentials, experience or knowledge in proper therapeutic methods." Ramsey, however, does not dispute that at the time Sheets was counseling Child, "no licensing, certification, or particularized education was required to be a counselor in Arizona." Additionally, Sheets was practicing as a counselor, a position for which she had education, training, and experience. Based on

our previous analysis, *supra* § V.A., we hold that in the circumstances presented, a counselor such as Sheets owes no duty to a third-party alleged abuser. Accordingly, the trial court did not err in finding Sheets owed no duty to Ramsey in counseling Child.

### VI. Costs

¶ 38 Pursuant to ARCAP 21, Sheets and YFAC request their costs incurred on appeal. Because Sheets and YFAC are prevailing parties, we award them their costs incurred on appeal upon timely compliance with ARCAP 21.

### CONCLUSION

¶ 39 For the reasons previously stated, we affirm the trial court's grant of summary judgment in favor of Defendants.

CONCURRING: DIANE M. JOHNSEN, and JON W. THOMPSON, Judges.