IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

―――――――――――――

DURABLE INVESTMENTS LLC, AN OREGON LIMITED LIABILITY COMPANY; AND
TEN BRIDGES LLC, AN OREGON LIMITED LIABILITY COMPANY,
*Plaintiffs/Appellants*,

*v.*

STEVE VILLARREAL AND JANE DOE VILLARREAL, HUSBAND AND WIFE;
EQUITY RECOVERY SPECIALISTS, L.L.C., AN ARIZONA LIMITED LIABILITY
COMPANY; HOUSEOPOLY, LLC, AN ARIZONA LIMITED LIABILITY COMPANY;
MARICOPOLY, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,
*Defendants/Appellees*.

No. 2 CA-CV 2025-0107
Filed March 5, 2026

―――――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2021003421
The Honorable Christopher Coury, Judge

**AFFIRMED**

―――――――――――――

COUNSEL

Zwillinger Wulkan PLC, Phoenix
By Scott H. Zwillinger and Jennifer L. Allen

and

Legal AZ, Tempe
By Morgan Seegmiller
*Counsel for Plaintiffs/Appellants*

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Defendants/Appellees Equity Recovery Specialists, LLC and Steve
Villarreal*

Spiess & Bell PC, Phoenix
By James O. Bell
*Counsel for Defendants/Appellees Maricopoly, LLC and Houseopoly, LLC*

---

**OPINION**

---

Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Brearcliffe and Chief Judge Staring concurred.

---

E C K E R S T R O M, Judge:

¶1       Durable Investments LLC and Ten Bridges LLC ("Appellants") appeal from the superior court's grant of summary judgment in favor of Steve Villarreal, Equity Recovery Specialists LLC, Houseopoly LLC, and Maricopoly LLC ("Appellees"), in which the court concluded that Appellants' "claims for tortious interference fail." Specifically, Appellants contend that Arizona's real estate broker licensing statutes do not apply to their businesses and that, even if they do, the court lacked the authority to void the contracts with Appellees based on the lack of a license. For the following reasons, we affirm.

## Factual and Procedural Background

¶2       The following facts are undisputed. Appellants' businesses involve acquiring distressed real estate. Their employees contact homeowners for the purpose of acquiring distressed properties. No employees of Appellants' businesses hold real estate broker licenses. Appellants had contractual relationships with several customers other than Appellees. Appellants allege that Appellees contacted these customers and made false and disparaging statements about Appellants. Appellants filed suit against Appellees alleging, among other claims, tortious interference with contracts and tortious interference with business expectancy. Appellees moved for partial summary judgment. The superior court granted the motion as to both claims related to tortious interference. Appellants filed a motion for reconsideration, which the court denied. Appellants subsequently filed a motion asking the court to dismiss their remaining claims and enter final judgment under Rule 54(c), Ariz. R. Civ. P., and such judgment was entered thereafter. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**Discussion**

## I. Summary Judgment

**¶3**      The superior court concluded that Arizona's broker licensing statutes required Appellants' employees to be licensed.  Because the employees lacked such licenses, the court voided Appellants' contracts with the foreclosed homeowners.  The court therefore granted summary judgment in favor of Appellees on Appellants' claims of tortious interference with those contracts.  Appellants contend the court erred in concluding that licensing is a requirement for limited liability companies who engage in real estate transactions.

**¶4**      Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  We interpret statutes and review a superior court's grant of summary judgment de novo, *Wilks v. Manobianco*, 237 Ariz. 443, ¶ 8 (2015), viewing the evidence in the light most favorable to the party against whom summary judgment was entered, *McAlister v. Loeb & Loeb, LLP*, ___ Ariz. ___, ¶ 21, 571 P.3d 891, 897 (2025).

**¶5**      As the superior court set forth in its ruling, to establish their claims for tortious interference, Appellants were required to show: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship on the part of the [Appellees]; (3) intentional interference inducing or causing a breach; (4) resultant damage to [Appellants'] relationship with its customer or business expectancy; and (5) that [Appellees] acted improperly." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, ¶ 74 (2002).  Appellants do not directly address these elements on appeal, but rather focus their argument on the superior court's conclusion that the underlying contracts were void.

### A. Applicability of Real Estate Broker Licensing Statutes

**¶6**      Appellants contend that the real estate broker licensing statutes do not apply to their employees' acts because those employees are not real estate agents as defined under A.R.S. § 32-2101.  "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute." *State v. Christian*, 205 Ariz. 64, ¶ 6 (2003).

¶7        In order to protect the public from "unscrupulous and unqualified persons," Arizona law requires that all practicing real estate brokers and salespersons be licensed. *Adams Realty Corp. v. Realty Ctr. Invs., Inc.*, 149 Ariz. 405, 408 (App. 1986) (quoting *Pruitt v. Pavelin*, 141 Ariz. 195, 202 (App. 1984)); *see* A.R.S. § 32-2122(B).   A license is required for any person who, "for another and for compensation," engages in certain acts related to real estate. § 32-2101(51).   These acts include buying, offering to buy, and negotiating or attempting to negotiate the purchase of real estate. § 32-2101(51)(a)–(c).   The licensing requirements also apply to a person who:   advertises or holds himself out as being engaged in the business of real estate, assists in procuring prospects, or negotiates transactions calculated to result in the sale of real estate.   § 32-2101(51)(h)–(j).   A license is also required for anyone who offers and provides such services in transactions for the sale of "other than real property if a real property sale . . . is a part of, contingent on or ancillary to the transaction." § 32-2101(51)(n).

¶8        Here, the superior court concluded that "[Appellant]s' employees were acting as real estate brokers" and were thus "required to be licensed." In support of that conclusion, the court found that Appellants' employees' actions included:   (1) "contacting homeowners of distressed properties on behalf of [Appellants]"; (2) "holding themselves out as being in the business of real estate"; (3) "soliciting a real estate transaction"; (4) "negotiating a deal on behalf of [Appellants]"; (5) "using discretion afforded to them by [Appellants] in the negotiations"; (6) "filling out details in a form quit claim deed"; and (7) "answering questions from the homeowner and even offering solutions."   The court therefore held that the contracts arising from those actions were unlawful under A.R.S. § 32-2165(A), which states that "[a] person who acts as a broker or salesperson within the meaning of this chapter, or who advertises in a manner that indicates that the person is licensed as a broker or salesperson, without being licensed as prescribed by this chapter is guilty of a class 6 felony."

¶9        Appellants contend that, notwithstanding the foregoing activities conducted by their employees, the businesses were statutorily exempted from licensing requirements pursuant to subsections (1) and (9) of A.R.S. § 32-2121(A).   The former provision exempts limited liability companies, particularly their "officer's, partner's, member's or manager's activities" from licensing requirements. But, here, Appellants' employees, rather than its partners or management, conducted the relevant activities. *See* § 32-2121(A)(1).   The latter subsection, § 32-2121(A)(9), addresses

licensing exemptions for employees. For that provision to apply, three requirements must be met. First, the employees may only perform "clerical, bookkeeping, accounting and other administrative and support duties." § 32-2121(A)(9). Second, the employees may not be "engaged in any other acts requiring a license under this chapter." *Id.* And third, the employees' employment may not be "conditioned on or designed to perform duties otherwise requiring a license under this chapter." *Id.* As the superior court correctly found, none of these requirements were satisfied with regard to the employee activities at issue here.

¶10 In a recent parallel appeal, another panel of this court held that Appellant Durable's employee was required to have been licensed to conduct a specific transaction. *In re Estate of Francoeur*, No. 2 CA-CV 2025-0061, ¶ 12 (Ariz. App. Nov. 19, 2025) (mem. decision). There, the parties stipulated that the employee in question had "(a) initiated contact with [homeowner], (b) 'held himself out to be in the business of real estate,' (c) negotiated the purchase price for the property, and (d) filled out the pertinent information on the quit claim deed for [homeowner's] signature." *Id.* Moreover, although the employee was not paid a bonus in the specific transactions, the compensation structure of his employment granted him a bonus after the fifth contract he acquired during any month. *Id.* We found that such acts required the employee to possess a real estate broker license under § 32-2101(51)(a)-(c), (h)-(j), (n). *Id.*

¶11 In the instant appeal, we similarly conclude that the superior court correctly relied on the stipulated facts and the record in determining the nature of Appellants' employees' conduct more generally. Those facts establish that, on Appellants' behalf, their employees contacted homeowners of distressed properties, held themselves out as engaged in the business of real estate, and solicited and negotiated real estate transactions while exercising discretion delegated to them by Appellants. In so doing, they filled out details on the deeds, answered homeowners' questions, and proposed potential solutions. They were also paid a salary and would receive bonuses directly tied to their closing of real estate transactions.

¶12 This conduct was similar in all material respects to that addressed in *Estate of Francoeur*, No. 2 CA-CV 2025-0061, ¶ 12. We see no basis to apply a different legal analysis here. Therefore, we affirm the superior court's interpretation and application of the statutes in finding that Appellants' employees were required to hold real estate broker licenses under § 32-2101 for their activities.

### B. Validity of Superior Court's Authority to Void Contracts

¶13        Appellants further contend the superior court exceeded its judicial authority by determining the contracts at issue were "illegal and void" because they were formed in violation of the licensing statutes. Arizona law presumes that a contract made in violation of a statute is illegal and void unless the legislature clearly intended a different remedy. *Yank v. Juhrend*, 151 Ariz. 587, 590 (App. 1986).

¶14        Mere technical violations of the licensing statutes are generally not grounds to void an underlying real estate transaction. *See* A.R.S. §§ 32-2153, 32-2154, 32-2160, 32-2165; *see also Mousa v. Saba*, 222 Ariz. 581, ¶¶ 1, 4, 9, 20-21, 30 (App. 2009). Here, however, Appellants' employees—without any official confirmation of their having secured the proper training or otherwise obtained necessary legal authorizations— were integrally involved in every step of persuading distressed homeowners to sell their properties and completing the transactions. In particular, they initiated contact with homeowners, represented themselves as engaged in the real estate business, and negotiated and facilitated the execution of deeds that conveyed real property to Appellants in exchange for money. They also received transaction-contingent bonuses. *See* A.R.S. § 32-2155 (forbidding payment or receipt of compensation for unlicensed brokerage acts); *see also* § 32-2101(17) ("'Compensation' means any fee, commission, salary, monies or other valuable consideration for services rendered or to be rendered as well as the promise of consideration whether contingent or not.").

¶15        On this record, Appellants' conduct cannot be categorized as a "technical violation" of the licensing statutes. Rather, the record establishes that Appellants regularly engaged employees whose job descriptions required them to perform the services of real estate brokers without being licensed to do so. *See Adams Realty Corp.*, 149 Ariz. at 408. The superior court therefore did not err in concluding that the contracts in question were entered into in violation of § 32-2165(A) and were therefore void. *Cf. Landi v. Arkules*, 172 Ariz. 126, 131-35 (App. 1992) (voiding agreement that operated as payment for unlicensed private investigator services). As a result, Appellants have not shown the court erred in concluding that their claims for tortious interference failed. *See Wells Fargo Bank*, 201 Ariz. 474, ¶ 74 (requiring existence of valid contract for claim of tortious interference).

## II. Attorney Fees and Costs

¶16        Appellees request their attorney fees and costs on appeal pursuant to A.R.S. § 12-349(A)(1) and Rule 25, Ariz. R. Civ. App. P.  Under § 12-349(A)(1), we must award attorney fees as a sanction if we find that a claim was brought "without substantial justification," meaning the claim is both groundless and not made in good faith.  § 12-349(F).  "[A] claim is 'not made in good faith' if (1) it is groundless and (2) the party or attorney knows or should know that it is groundless, or is indifferent to its groundlessness, but pursues it anyway."  *Ariz. Republican Party v. Richer*, 257 Ariz. 237, ¶ 38 (2024).

¶17        We do not agree Appellants brought this appeal without substantial justification.  Although their arguments ultimately do not prevail, Appellants presented two questions on which Arizona law offers limited guidance.  First, they challenged whether the statutory exemptions in A.R.S. §§ 32-2121(A)(1) and (9) apply to limited liability companies and their employees such that no real estate broker's license was required.  Those exemptions are neither well-litigated nor clearly resolved by existing precedent.  Second, Appellants questioned whether the superior court possessed authority to void the underlying contracts based on the alleged statutory violation.  Our case law addressing when illegality permits or requires voiding a contract based on these statutes is sparse.  In light of these circumstances, we cannot conclude that the appeal was groundless or pursued in bad faith.  *See Richer*, 257 Ariz. 237, ¶ 38.

¶18        For the same reasons, we do not conclude that Appellants violated Rule 25, Ariz. R. Civ. App. P.  Although Appellants have not prevailed, we cannot say that the appeal was frivolous or pursued solely for purposes of delay.  *See* Ariz. R. Civ. App. P. 25.  However, as the successful party, Appellees are entitled to their costs on appeal, A.R.S. § 12-341, upon their compliance with Rule 21(b), Ariz. R. Civ. App. P.

### Disposition

¶19        For the foregoing reasons, we affirm the judgment of the superior court.