**Lolita MITCHELL, Plaintiff–Appellant,**

**v.**

**James V. ALUISI, Individually and in his official capacity as Sheriff of Prince George's County; J. Michael O'Ferrall, Individually and in his official capacity as Administrative Clerk for the District Court of Maryland; Margaret Kostritsky, Individually and in her official capacity as the Chief Clerk for the District Court of Maryland; Prince George's County, Maryland; Szabo, Inc., Defendants–Appellees,**

**and**

**Ronald J. Collins, Individually and in his official capacity as Deputy Sheriff; Robert Kiker, Individually and in his official capacity as Deputy Sheriff of Prince George's County; Samuel F. Saxton, Individually and in his official capacity as the Administrator of the Prince George's County, Maryland Detention Center, Defendants.**

No. 87–7775.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1988.

Decided April 21, 1989.

Susan K. Goering (American Civil Liberties Union of Maryland, on brief) for plaintiff-appellant.

Susan Penny Whiteford, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., James G. Klair, Asst. Atty. Gen., on brief); Thomas Ralston Hendershot, Katherine Sacco Duyer (James P. Gleason, Jr., John F. Breads, Jr., County Attorney's Office, on brief) for defendants-appellees.

Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WILKINSON, Circuit Judge:

Lolita Mitchell brought this action pursuant to 42 U.S.C. § 1983 claiming that the Prince George's County Sheriff's Department violated her Fourth, Fifth, and Sixth Amendment rights by serving her with a recalled bench warrant and that the Prince George's County Detention Center denied her adequate medical care in violation of the Eighth Amendment. We affirm the grant of summary judgment for the various categories of defendants on the recalled warrant claim, including the court clerks, the deputy sheriffs, and the sheriff. We reverse the grant of summary judgment with respect to Mitchell's medical claim and remand for further proceedings.

## I.

Shortly after being discharged from the hospital, Lolita Mitchell, a 53–year old resident of Prince George's County, Maryland, failed to appear for the trial of several traffic offenses. Mitchell's attorney contacted the court regarding her failure to appear and on July 13, 1984 an order was entered withdrawing the bench warrant. Mitchell appeared for trial on September 17, 1984 and all charges were dropped.

On November 2, 1984, despite Mitchell's protests that the warrant had been recalled, defendant deputy sheriffs Collins and Kiker arrested Mitchell pursuant to the cancelled bench warrant. Following her arrest, Mitchell was taken to the Prince George's County Detention Center where her prescription medications for hypertension, diabetes and heart disease were confiscated. Mitchell alleges that during confinement her repeated requests for these medications were denied.

Although the exact length of her stay is disputed, the Center's log indicates that Mitchell was detained for three and one-half hours. Mitchell had a history of hypertension and cardiac difficulties requiring medical attention. Mitchell alleges that she suffered from tachycardia during her confinement and that following her release she experienced nausea, numbness in the tips of her fingers, headaches and heart palpitations. The day after her release, Mitchell went to the emergency room and underwent blood and urine tests and an EKG. The next day she was admitted to

the hospital where she remained for eight days. She was diagnosed as having undergone a hypertensive crisis.

This § 1983 action followed. Named as defendants were James V. Aluisi, Sheriff of Prince George's County; Ronald J. Collins, Deputy Sheriff; Robert Kiker, Deputy Sheriff; J. Michael O'Ferrall, Administrative Clerk for the District Court of Maryland for Prince George's County; Margaret Kostritsky, Chief Clerk of the District Court of Maryland for Prince George's County; Samuel F. Saxton, Administrator of the Prince George's County Detention Center (PGCDC); Prince George's County itself; and Szabo, Inc. (Szabo), health care provider to the PGCDC.

After discovery, the magistrate recommended that summary judgment be granted in favor of all defendants. The recommendation was adopted by the district court on October 30, 1987. Mitchell appeals.

## II.

■ We address the claims against each set of defendants in turn. Because Mitchell's arrest was made pursuant to a facially valid warrant, we affirm the district court's grant of summary judgment in favor of the deputy sheriffs. In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), plaintiff had been mistakenly arrested in place of his brother because his brother had shown identification with plaintiff's picture and name when released on bail for a narcotics charge. The court found that because plaintiff had been detained on a warrant that was valid on its face and the mistake was an inadvertent one, there was no violation of due process. While Mitchell claims that she alerted the arresting officers that the charges against her had been dropped, the Supreme Court has declined to hold that "a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence." *Id.* at 145–46, 99 S.Ct. at 2695.

■ The claims against sheriff Aluisi and the clerks are brought against them both personally and in their official capacities. However, construing all facts in the light most favorable to plaintiff, these claims fail on two grounds: first, the failure to recall the warrant was nothing more than an act of negligence and second, there was no proof of any policy or practice which would serve as a basis for municipal liability.

Defendants' conduct demonstrated at most a lack of due care. "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (damages claim for injuries from plaintiff's slipping on a pillow negligently left on a stairway not cognizable under § 1983). Moreover, plaintiff has failed to demonstrate that defendants were guilty of even so much as a negligent act. It is the responsibility of the judge's secretary to prepare warrant cancellations, inform the sheriff of the cancellation, send the cancellation to the sheriff with a copy in the court file, and return the file to the clerk's office for filing and storing. No evidence was presented that the judge's secretary even notified the sheriff's office pursuant to court practice. Similarly, the magistrate found that defendants O'Ferrall and Kostritsky had no responsibility as clerks for recalled warrants. There is, in short, no indication in the summary judgment record that, with regard to this recalled warrant, the sheriff or the clerks of court acted with anything approaching unconstitutional turpitude.

There is also no proof of any impermissible policy here which would give rise to municipal liability. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There is no evidence of a policy anywhere in Prince George's County to serve invalid warrants; by definition, therefore, the "challenged action" cannot have been taken pursuant to it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Nor is it clear that the clerk's or the sheriff's office, as opposed to state judges, were responsible for formulating policy on re-

called warrants. *See* Annotated Code of Maryland, Constitution, Art. IV; § 10; Courts and Judicial Proceedings, § 1–607; *Praprotnik*, 108 S.Ct. at 924 (identification of policymaking officials is a question of state law). There was also no proof of an unconstitutional custom or practice in this case. *See id.* at 926, *quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142. (predication of liability on "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law' "). In fact, plaintiff has not produced evidence of any other example of service of a recalled bench warrant by the respective defendants.

Finally, we cannot deduce a municipal policy from bare allegations that state procedures were inadequate to prevent the service of recalled warrants. Plaintiff has suggested various improvements to the County's process for recalling warrants: written lists of all recalled warrants which are phoned into the Sheriff's Department; use of court computers to check the validity of old bench warrants before they are served; cross-checks of outstanding warrants against the district court daily docket sheets. The absence of such procedures hardly denotes an unconstitutional county policy, however.

The Supreme Court has noted that nearly every § 1983 plaintiff will be able to point to something a municipality could have done to prevent an unfortunate incident. Permitting cases to go forward on such a basis "would result in *de facto respondeat superior* liability." *City of Canton, Ohio v. Geraldine Harris*, — U.S. —, —, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). There is also a difference between the occurrence of a clerical error and the existence of an impermissible municipal policy. Even the most adequately trained officers occasionally make mistakes and the fact that they do so "says little about the ... legal basis for holding the city liable." *Canton*, — U.S. at —, 109 S.Ct. at 1206. Any other rule would draw the federal judiciary too deeply into the details of state court administration.

## III.

Mitchell also alleges a denial of adequate medical care while she was held in the detention center. She alleges a denial of care both in her particular case and in the failure of Szabo and Prince George's officials to train correctional officers to undertake health care screening. We believe that both of these claims must be remanded for further factual development.

When Mitchell's claim originally came before the district court, it was unclear whether the relationship between a private health care provider and a prison gave rise to liability under 42 U.S.C. § 1983. Thus much of the argument before the district court concerned the applicability of this circuit's decision in *Calvert v. Sharp*, 748 F.2d 861, 863 (4th Cir.1984). *West v. Atkins*, — U.S. —, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), resolved this question. The Supreme Court held that a physician who is under contract with the state to provide medical treatment to inmates at a state prison hospital acts "under color of state law," and is therefore subject to suit under § 1983. While the facts of that case involved a private physician as defendant, its holding clearly applied to any health care provider, such as Szabo, whose "conduct is fairly attributable to the State." *Id.* at 2258.

Our decision in *Calvert v. Sharp* would not entitle defendants to qualified immunity on Mitchell's individual claim despite the fact that it was the law of this circuit in the period prior to *West v. Atkins*. *Calvert* espoused a view of state action under the Fourteenth Amendment, not a standard of conduct on which defendants were entitled to rely. The standard of conduct for purposes of qualified immunity—one of "deliberate indifference to serious medical needs"—has been well established since the Supreme Court's decision in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

Perhaps because of the emphasis put on the question posed by *Calvert*, the record

is incomplete with regard to the critical issues now before this court. Because Mitchell was a pretrial detainee and not a convicted prisoner at the time of the alleged denial of medication, her claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which operates only after the state has secured a conviction. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). A violation of the Eighth Amendment standard set forth in *Estelle* may be used, however, to determine a due process violation. *Whisenant v. Yuam*, 739 F.2d 160, 163 n. 4 (4th Cir.1984).

According to the affidavit of defendant Saxton, the processing officer at the PGCDC is to record any current illnesses or medical conditions of the detainee and any type of prescribed medicine. A number of facts, however, remain unclear: whether the way in which this procedure was administered by Szabo or Saxton reached the constitutional threshold for a claim of "deliberate indifference" in Mitchell's particular case; who, if any, of the named defendants were responsible for meeting Mitchell's alleged requests for medication; what response, if any, was made to her requests; and the extent to which the processing officer was or should have been aware of Mitchell's general medical condition. In short, we have no way to determine at this juncture whether summary judgment was appropriate on this claim or whether it was not. Because the issues were not developed in the record under the guidance of the Supreme Court decision in *West*, we remand for further proceedings.

Mitchell has also alleged that the arrangement in effect at the time of her detention permitted a correctional officer, not a professional health care employee of Szabo, to do the screening. She alleged further that lay correctional officers doing the medical screening at PGCDC had no training whatsoever. We think that this claim must be remanded in light of the Supreme Court's decision in *City of Can-*

*ton, Ohio v. Geraldine Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

We recognize, of course, both a legitimate state interest in the confiscation of contraband and the wide latitude officials enjoy in preventing the infiltration of illegal substances into prisons and other centers of detention. *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977). It is clear that courts must defer to the policies of prison administrators in this area, including those policies that relate to the training of correctional personnel. At the same time, authorities may not ignore the need of detainees such as Mitchell for lawful prescription medications whose ministration might prevent a serious medical emergency. *Cf. Matzker v. Herr*, 748 F.2d 1142, 1147 (7th Cir.1984).

Whether "any deficiency in training actually caused" the alleged indifference to Mitchell's medical needs is a question that must await remand. *Canton*, —— U.S. at ——, 109 S.Ct. at 1206–07. The Supreme Court in *Canton* and this court in *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir.1987), have made clear the strict standards under which Mitchell's claim of inadequate training of medical personnel must be judged. Only those deficiencies in training or defects of process which reflect at least a "deliberate indifference" to the constitutional rights of citizens are actionable under *Monell*. "[M]ere negligence on the part of policymakers is not sufficient." *Id.* at 1390. The Supreme Court, in fact, rejected the view that even "a showing of 'gross negligence' in a city's failure to train its employees is adequate to make out a claim under § 1983." *Canton*, —— U.S. at —— n. 7, 109 S.Ct. at 1204 n. 7. Only where the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," can policymakers "be said to have been deliberately indifferent to the need." *Id.* at ——, 109 S.Ct. at 1205. This claim has not been developed in light of *Canton*, and we think that it too must be remanded for further proceedings.

AFFIRMED IN PART; REMANDED IN PART.