# United States Court of Appeals
## For the First Circuit

No. 03-1084

CECILIO PEÑA-BORRERO; ORLANDO PEÑA-AYALA;
ASTRY PEÑA-AYALA,

Plaintiffs, Appellants,

v.

JUAN ESTREMEDA; HECTOR MILLAN SANTIAGO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Mauricio Hernández-Arroyo for appellants.
Eduardo A. Vera-Ramírez with whom Eileen Landrón Guardiola and
Landrón & Vera, LLP were on brief for appellees.

April 9, 2004

**COFFIN**, <u>**Senior Circuit Judge**</u>.  On November 10, 2000, appellant Cecilio Peña-Borrero was arrested by officers of the Puerto Rico Police Department on a valid warrant.  He was released the same day after posting a $300 bond.  Nearly six weeks later, on December 21, he was awakened at his home in the middle of the night and arrested again; the warrant carried by the officers was facially identical to the earlier document but was no longer active because of its prior execution.  Despite his protests of a mistake, and his display of documents showing the earlier arrest and release, the officers took him into custody and transported him to police headquarters.  He was released later that morning.  Appellant subsequently filed this action, claiming civil rights violations under federal and Commonwealth law.  The district court concluded that the complaint failed to state a viable claim for relief and thus granted defendants' motion to dismiss.  We now vacate the dismissal and remand the case for further proceedings.

## I. <u>Background</u>

We summarize the facts and allegations set forth in the complaint. When police officers arrived at appellant's home at approximately 3:30 a.m. on December 21, 2000, he and his two young children, Orlando and Astry Peña-Ayala,[1] were asleep.  Appellant heard a loud noise in the yard and looked out to see eight to ten

---

[1] Although the children also are plaintiffs-appellants, for simplicity, we refer only to Peña-Borrero as the appealing party.

police officers gathered there. Informed that the officers had an arrest warrant, appellant asked if it involved "the Sabana Grande or Mayaguez case" and reported that the warrant already had been executed. Two officers, one of whom was identified as Captain Santiago, repeated the instruction for appellant to come outside. As he opened the door to comply,[2] officers entered the house, pushed appellant's arms behind his back, and handcuffed him in front of the two children. In the course of the arrest, he re-injured his ribs and back, which previously had been injured in a car accident.

Once outside, appellant told the officers that he had in the trunk of his car a copy of the executed arrest warrant and a receipt for the bond that he had posted to be released on bail. Officers retrieved his car keys from inside the house, opened the trunk, and found the copy of the executed warrant. It was identical to the one possessed by defendants – showing its issuance in Sabana Grande on October 19 – but bore a stamp showing that it had been executed on November 10. The bond receipt also was dated November 10.

Despite the obvious overlap, the officers persisted in taking appellant to police headquarters. His children were taken away in another vehicle. Appellant was placed in a cell with three other

---

[2] Appellant stated that he immediately moved to exit the house because the officers threatened to break down his door and gates and used foul language.

individuals. He met with his attorney at about 7 a.m. and was taken to court at about 9 a.m., "chained together with other arrestees." After some time, a judge reviewed the court papers, ordered him released, and apologized for the mistake.

Appellant brought suit under 42 U.S.C. §§ 1983 and 1988, and various provisions of Commonwealth law, contending that the officers,[3] inter alia, violated his Fourteenth Amendment right to due process and his Fourth Amendment right to be free from illegal searches and seizures by subjecting him to false arrest, false imprisonment, excessive force and an illegal search of his home. He further asserted that the officers conspired to deprive him of these rights. He claimed that the officers acted at least recklessly by failing to check police records before executing a two-month-old warrant and by ignoring the documentary evidence showing that the warrant previously had been executed.

On defendants' motion to dismiss, the district court concluded that, "[a]t best . . . plaintiff's allegations state negligence claims, which, though actionable under Puerto Rico law, do not rise to the level of reckless disregard or callous indifference required for a constitutional claim." The court thus dismissed the federal

---

[3] The complaint initially was brought against four named officers and four additional unnamed officers, but appellant dismissed the claims without prejudice against all but two defendants: Héctor Millán-Santiago and Juan Estremeda.

claims explicitly, implicitly dismissing as well the pendent commonwealth claims.

On appeal, appellant contends that the district court improperly applied a heightened pleading standard to assess his claims and erred in finding his allegations inadequate to support a constitutional violation.[4]

## II. Discussion

We review de novo the grant of a motion to dismiss, keeping in mind that a complaint may be dismissed for failure to state a claim "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)); see also Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998). At oral argument, appellants' counsel acknowledged that the conspiracy claim was thinly developed, and we agree with the district court that the allegations in the complaint directed to conspiracy are wholly conclusory and inadequate, under any pleading standard, to support relief. No more is necessary on that issue.

The remaining § 1983 claims "need only comply with the liberal 'notice pleading' standards of the Federal Rules." Wilson v. Town of Mendon, 294 F.3d 1, 10 (1st Cir. 2002) (citing Leatherman v.

---

[4] An additional argument that the court improperly allowed defendants to file a sur-reply concerning their motions to dismiss is without merit, and we do not address it.

-5-

Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)); see also Swierkiewicz, 534 U.S. at 513 ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").[5]  With respect to those claims, we accept as true all well-pleaded facts and draw all reasonable inferences in plaintiff's favor.

Following these precepts, we accept as true that appellant was abruptly awakened in the middle of the night, forcefully arrested, and incarcerated for some six hours, despite unequivocal documentary evidence that the warrant justifying his arrest had been rendered invalid by prior execution.  Moreover, officers had failed to check with the precinct in which the warrant originated to verify that it remained active.[6]

Based on these facts, we understand appellant to allege violations of the Fourth Amendment, applicable to the states through the Fourteenth Amendment, stemming from both the fact of

---

[5] The parties argue at some length about whether a heightened pleading standard, as discussed in Judge, governs this case. Putting aside the conspiracy claim, the heightened review discussed in Judge would be inapplicable here because the claims do not require proof of wrongful motive.  See Judge, 160 F.3d at 74 (quoting Crawford-El v. Britton, 523 U.S. 574, 597-98 (1998)).

[6] Appellant did not specifically allege in his complaint that police department procedures required defendants to check internal records before making an arrest under a months-old warrant, but he made that assertion in his opposition to defendants' motions to dismiss and the district court presumed the obligation existed.  In their brief on appeal and at oral argument, defendants accepted the district court's summary of the facts and assumed the existence of such a requirement.

his arrest and its forceful nature.  See <u>Albright</u> v. <u>Oliver</u>, 510 U.S. 266, 274 (1994) (plurality opinion) ("deprivations of liberty that go hand in hand with criminal prosecutions" are properly analyzed under the Fourth Amendment); <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 395 (1989) (Fourth Amendment provides the guide for analyzing claims that law enforcement officers used excessive force in the course of an arrest or other seizure).

We begin our analysis with the claim of excessive force, which is argued by appellant in highly abbreviated, conclusory form.  His complaint alleges that officers threatened to break down the door and gates to gain entry to his home, used foul language, and

> pushed both of [his] arms up behind his back up to almost his neck, whereby plaintiff told them that they were hurting him.  Plaintiff was injured while being handcuffed in front of his two children . . . . Plaintiff reinjured his ribs near his chest which had been fractured due to a prior car accident in 1997 and his back was also injured where he has three (3) herniated discs.

In essence, appellant asserts a constitutional violation based on harsh language and handcuffing that was accomplished by pushing his arms behind his back, causing injury exacerbated by prior non-obvious injuries.  Making only cursory reference to this claim in his brief, he suggests that, since no force was necessary to effectuate his arrest, any force was therefore unreasonable and excessive.  In our view, however, the allegations demonstrate no more than the "degree of physical coercion," <u>Graham</u>, 490 U.S. at 396, typically attendant to an arrest.  Given the unknown

-7-

circumstances facing the officers as they entered appellant's home, see id. ("a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"), appellant's allegations of forceful handcuffing are insufficient to state a constitutional claim of excessive force. See id. ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' Johnson v. Glick, 481 F.2d [1028, 1033 (2d Cir. 1973)], violates the Fourth Amendment."); cf. Alexis v. McDonald's Restaurants of Mass., 67 F.3d 341, 352-53 (1st Cir. 1995) (finding actionable excessive force claim where officers "suddenly and violently grabbed and pulled" plaintiff from a restaurant booth and across the table; handcuffed her hands tightly behind her back; dragged her from the booth, bruising her legs; hoisted her by her elbows and carried her to the police car, and then pushed her in).[7]

---

[7] Although the complaint also refers to an illegal search, neither the allegations contained therein nor the argument on appeal are sufficiently developed to require our consideration.

The remaining claim, however, is not so easily dismissed.[8] The Fourth Amendment guarantees individuals "the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham, 490 U.S. at 394. Despite facially authentic documentary evidence that the warrant was no longer effective, and with knowledge that they had failed to follow precautionary procedures to assure its vitality, the officers persisted with appellant's arrest and detention. If any doubts remained after appellant displayed the stamped warrant, a quick phone call to the precinct presumably would have resolved them. While the officers arguably were simply negligent in failing to check on the warrant before they acted on it, following through on the arrest and detention once confronted with appellant's documents reflected a much more deliberate disregard for whether the warrant remained valid. We thus conclude that the complaint's allegations would support a jury conclusion that defendants acted unreasonably in arresting appellant and taking him into custody. See Graham, 490 U.S. at 397 ("[T]he reasonableness inquiry [in the Fourth

---

[8] Appellant's complaint suggests that he is asserting independent claims for "false arrest" and "false imprisonment." In this context, we view the former as a subset of the latter and believe it most appropriate to view the allegations as stating a single claim for violation of appellant's Fourth Amendment right to be free from an unreasonable seizure. Cf. Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998) ("The right to be free from unreasonable seizure (and, by extension, unjustified arrest and detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through which the Fourth Amendment constrains state action).").

Amendment context] . . . is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

The documentary evidence that appellant presented to the officers distinguishes this case from the mistaken identity setting of Baker v. McCollan, 443 U.S. 137 (1979), cited by the district court. In Baker, the Supreme Court found no constitutional claim was stated where the plaintiff was arrested on a valid warrant that was issued in his name but intended for his brother. In the course of its decision, the Court observed that "a sheriff executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." Id. at 145-46. In this case, however, appellant's claim of improper arrest arguably required no independent investigation; he did not simply assert a mistake, but also provided substantiation.

Our decision in Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st Cir. 1990), also supports appellant's right to pursue his claim. In that case, the plaintiff similarly was arrested and transported to court despite his protests that the underlying matter had been resolved and the arrest warrant vacated. We concluded that the general marshal of the court that issued the

warrant could be found liable under § 1983 for recklessly recirculating an old warrant without first checking the court's records, which included a notation that the warrant had been vacated.  See id. at 227.[9]  In this case, where the officers had at hand proof that the warrant was deficient, the decision to proceed with appellant's arrest and incarceration appears even more reckless than the general marshal's conduct in Torres Ramirez, and more clearly unreasonable.

Defendants make two other attempts to dispose of the complaint. First, they contend that the allegations fail to attribute specific acts to either defendant.  Reading the complaint in the light most favorable to appellant, however, we have no difficulty concluding that the Fourth Amendment claim remains viable against Millán.  He is identified as the supervisor of the group of officers at the scene; as such, he presumably had the authority to call off the arrest – or check with the issuing precinct – when presented with the evidence casting doubt on the warrant's continuing validity.  We also conclude that it is premature to dismiss the claim against defendant Estremeda.  Although he is mentioned by name only once – appellant allegedly

_____

    [9] We note that neither the Supreme Court in Baker nor our panel in Torres Ramirez analyzed the plaintiffs' cases under the Fourth Amendment's "reasonableness" standard and instead viewed the plaintiffs' claims as alleging violations of the Fourteenth Amendment's protection against deprivations of liberty without due process of law.  See Baker, 443 U.S. at 142; Torres Ramirez, 898 F.2d at 226.

saw Estremeda "abruptly wake up his sleeping children" – at this stage of the case, appellant's allegation that "codefendants found the court papers but ignored them completely" is properly attributable to each of the officers on the scene. See Judge, 160 F.3d at 76 n.13 ("[G]eneral allegations of omissions by all of the officer defendants as a group gave the defendants 'fair notice' . . . of at least the general nature of [the plaintiff's] claims against them.") (citation omitted).

The defendants' second point of attack is via the doctrine of qualified immunity. "An officer is entitled to qualified immunity when his conduct is objectively reasonable based on the information available at the time and in light of clearly established law." Torres Ramirez, 898 F.2d at 228; see also Kelley v. LaForce, 288 F.3d 1, 6-7 (1st Cir. 2002). We think it apparent that defendants may not use this defense to extinguish appellant's case. Taken in the light most favorable to appellant, the allegations show that defendants pursued appellant's arrest and incarceration in the face of unambiguous evidence that their warrant was unenforceable. In our view, such a seizure could be objectively unreasonable and a violation of appellant's clearly established Fourth Amendment rights. If a jury so finds, defendants would not be protected by qualified immunity, and dismissal on that basis is therefore unavailable.

For the foregoing reasons, the judgment is vacated and the case is remanded for further proceedings consistent with this opinion.