240 P.3d 1246

Clifford J. **OCHSER,** a single man, Plaintiff/Appellant,

v.

Deputy Gerard **FUNK,** in his individual capacity as a deputy with the Maricopa County Sheriff's Office, and Jane Doe Funk, husband and wife; Sergeant Anthony R. Cruz, in his individual capacity as a deputy with the Maricopa County Sheriff's Office, and Jane Doe Cruz, husband and wife, Defendants/Appellees.

No. 1 CA–CV 09–0141.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 28, 2010.

Robbins & Curtin, PLLC By Joel B. Robbins, Anne E. Findling, Phoenix, Attorneys for Appellant.

Jones, Skelton & Hochuli, PLC By Eileen Dennis GilBride, Daniel P. Struck, Lisa S. Wahlin, Phoenix, Attorneys for Appellees.

## OPINION

OROZCO, Judge.

¶ 1 Appellant–Plaintiff Clifford J. Ochser (Ochser) appeals the trial court's grant of summary judgment in favor of Appellees–Defendants Funk, et al. (collectively, Defendants). For the following reasons, we affirm the trial court's grant of summary judgment in favor of Defendants.

## FACTS AND PROCEDURAL HISTORY

¶ 2 When reviewing motions for summary judgment, we view the facts in the light most favorable to the non-moving party and the party against whom summary judgment was entered. *Mousa v. Saba*, 222 Ariz. 581, 585, ¶ 15, 218 P.3d 1038, 1042 (App.2009).

¶ 3 On May 5, 2004, the Maricopa County Sheriff's Office (MCSO) conducted "Operation Mother's Day 2004," an operation to arrest parents with outstanding child support warrants. MCSO obtained a list of active child support arrest warrants from the Arizona Department of Public Safety (DPS). Each of the warrants included in the "Operation Mother's Day 2004" list was checked for validity prior to inclusion on the list. Ochser's name was included on MCSO's active warrant list because he had an arrest warrant issued on January 3, 2003, as a result of unpaid child support. The arrest warrant, however, had been previously quashed in a March 2003 minute entry. Despite being quashed, Ochser's warrant remained in active status with MCSO, and his name was included on the May 4, 2004 list.[1] Pursuant to MCSO warrant procedure, Defendants confirmed the validity of Ochser's warrant with the MCSO OIC prior to executing the warrant.

¶ 4 On May 5, 2004, Defendants arrived at Ochser's workplace in Flagstaff, Arizona and informed him that he was under arrest in connection with an outstanding child support arrest warrant. Ochser protested his arrest, explaining the warrant had been quashed. He told Defendants he had a certified copy of the minute entry on his office desk that would confirm the warrant had been quashed. Defendants conferred and agreed to make an inquiry regarding the validity of the warrant. One Defendant officer alleges to have made a phone call to inquire about the validity of the warrant to both OIC and the chambers of the judge who issued the warrant.[2] Despite Ochser's protests, Defen-

---

1. Julie Ahlquist, Sheriff's Records Specialist Supervisor, testified that in her opinion, MCSO was most likely not contacted by the court to quash the warrant. Alan Quackenbush, a Sheriff's Records Lead for the Operation Information Center (OIC) for the MCSO warrants division, verified the OIC maintains a quash log for all verbal notices it receives to quash warrants. Additionally, Quackenbush indicated OIC maintains copies of all documents it receives from a court indicating a warrant has been quashed. Quackenbush further noted that OIC had received no notice that Ochser's warrant had been quashed during the time period of March 13, 2003 through the end of September 2003.

2. Ochser claims this is "implausible" because if done, Defendants would have found the warrant was quashed. On summary judgment, taking as true Ochser's assertion that Defendants did not

dants arrested Ochser pursuant to the warrant.

¶ 5 Ochser was released the following day after it was determined that the warrant had been quashed. Ochser filed a complaint, alleging among other wrongs, violations of his Fourth and Fourteenth Amendment rights. Defendants filed a motion for summary judgment, arguing that: (1) Ochser failed to comply with Arizona's notice of claim statute; (2) Defendants arrested Ochser on a facially valid arrest warrant; and (3) Defendants were entitled to qualified immunity on all claims. After reviewing Ochser's response, Defendants' reply and hearing oral argument, the trial court granted Defendants' motion for summary judgment and explained:

> U.S. Supreme Court and Ninth Circuit authority provide that a law enforcement officer is entitled to qualified immunity from a § 1983 claim when the officer makes an arrest on a facially valid warrant. *Baker v. McCollan,* 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433] (1979); *Arnsberg v. United States,* 757 F.2d 971 (9th Cir.1985) cert. denied 475 U.S. 1010 [106 S.Ct. 1183, 89 L.Ed.2d 300] (1986). Plaintiff does not challenge that the warrant was valid on its face. In essence, Plaintiff argues that these Defendants were required to investigate Plaintiff's claim that the warrant had been quashed. *Baker* is to the contrary. As a result, Defendants' failure to investigate did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982).

¶ 6 Ochser filed a motion for reconsideration, which was denied. The trial court signed a final judgment in favor of Defendants pursuant to Arizona Rule of Civil Procedure 58(a) and dismissed the action with prejudice.

¶ 7 Ochser timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 and –2101.B (2003).

## DISCUSSION

¶ 8 Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). A motion for summary judgment should be granted "if the facts produced in support of the claim ... have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). When reviewing a grant or denial of summary judgment, "we determine *de novo* whether any genuine issues of material fact exist and whether the superior court properly applied the law." *Mousa,* 222 Ariz. at 585, ¶ 15, 218 P.3d at 1042.

¶ 9 Ochser raises two issues on appeal. First, whether "an arrest is unlawful if the arresting officer's reliance on an apparently valid warrant is unreasonable in light of the relevant circumstances." Second, whether as of the date of the arrest in this case, "was the law clearly established that an officer could not rely on an apparently valid warrant when it would be unreasonable to do so in light of the relevant circumstances?"

¶ 10 Ochser contends that the question before us is whether, as of the date of his arrest, "it was clearly established that where an officer is put on notice that objective evidence is readily at hand that would show the invalidity of an arrest warrant, that the officer was required to examine this objective evidence prior to effecting an arrest." He argues that the trial court's ruling conflicts with federal court decisions in various cases including *Berg v. Allegheny County,* 219 F.3d 261 (3d Cir.2000), *cert. denied,* 531 U.S. 1072, 121 S.Ct. 762, 148 L.Ed.2d 664 (2001), *Torres Ramirez v. Bermudez Garcia,* 898 F.2d 224 (1st Cir.1990) and *Pena–Borrero v. Estremeda,* 365 F.3d 7 (1st Cir.2004). Ochser explains that "[t]o the extent that the trial court held that this right exists but was not clearly established, the federal court cases *all* pre-existed Mr. Ochser's arrest ... and,

---

call either OIC or the issuing judge's chamber, it is undisputed that MCSO's records, which Defendants checked prior to executing the warrant, reflected Ochser's warrant was active.

in fact, hold that qualified immunity was not available to the Defendant officers."

¶ 11 Defendants counter that because the warrant was facially valid, they "were not obligated to further investigate [Ochser's] protestations of innocence," and whether they checked the warrant's status or not "is irrelevant here and is not a genuine issue of material fact." Defendants are essentially arguing that the trial court correctly held qualified immunity precluded any liability on the part of Defendants. Specifically, Defendants contend summary judgment was proper because the officers could have reasonably believed, as a matter of law, that Ochser's arrest was lawful, in light of the clearly established principles governing arrests pursuant to facially valid warrants.

### Qualified immunity

 ¶ 12 Qualified immunity as to a 42 U.S.C. section 1983 claim is a question of federal law. *State v. Superior Court*, 185 Ariz. 47, 49, 912 P.2d 51, 53 (App.1996). Therefore, "we follow federal court decisions on the subject." *Id.* Qualified immunity protects government officials from civil liability if a reasonable government official could have believed his actions to be lawful, in the light of clearly established law and the information he possessed at the time of the action. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). It is a doctrine that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Officials are entitled to the protections of qualified immunity, unless "the law clearly proscribed the actions" that were taken. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

 ¶ 13 In this case, we consider qualified immunity using the two-step test set forth in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).[3] The first step is to determine whether a constitutional right was violated. *Id.* If so, the second step is to determine whether the right at issue was "clearly established" at the time of the alleged violation. *Id.* The determination as to whether a right is "clearly established" depends specifically on its context in the instant case. *Id.* In order for a right to be "clearly established ... the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Stated in other terms, a government official is protected by qualified immunity if he can "demonstrate that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law." *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir.2007). When determining claims of qualified immunity, "courts are sensitive to '[t]he broad range of reasonable professional judgment accorded' law enforcement officials in the § 1983 context." *Berg*, 219 F.3d at 272 (quoting *Greene v. Reeves*, 80 F.3d 1101, 1107 (6th Cir.1996)).

¶ 14 Our inquiry in the present case is whether Defendants' conduct violated a constitutional right which was clearly established law; and if so, did Defendants nevertheless reasonably believe that their conduct was lawful in light of the information they possessed at the time of Ochser's arrest?

### Whether a constitutional right was violated

 ¶ 15 There is no doubt that Ochser has a constitutional right to be free from unreasonable seizures, here an arrest, pursuant to the Fourth Amendment.[4] The Supreme Court, however, has recognized that when viewing constitutional rights, such as the right to be free from unreasonable

---

3. We note the Supreme Court recently revisited the two-step *Saucier* test and concluded while the sequential *Saucier* analysis may be helpful in qualified immunity cases, "it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

4. The Fourth Amendment guarantees individuals the right to be "secure in their persons ... against unreasonable searches and seizures" by government officials. U.S. Const. amend. IV.

searches and seizures, that right is "clearly established" when any action violates the right, "no matter how unclear it may be that the particular action is a violation." *Anderson*, 483 U.S. at 639, 107 S.Ct. 3034. The Court further explained that "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of [the *Harlow* decision]."[5] *Id.* The Court also held that the right allegedly violated must be articulated and "clearly established" in a more particularized way. *Id.* at 640. Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Id.* In other words, "in light of pre-existing law the unlawfulness [of the action in question] must be apparent." *Id.*

***Whether the right was "clearly established"***

¶ 16 Whether the law is "clearly established" and whether a government official could have reasonably believed his conduct was lawful in light of the surrounding circumstances are questions of law. *See Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. "[E]ven if a defendant's conduct actually violates a plaintiff's Constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Duckett v. City of Cedar Park*, 950 F.2d 272, 280 (5th Cir.1992) (quotation omitted).

¶ 17 While Ochser indeed has a broad constitutional right to be free from unreasonable searches and seizures, it does not necessarily follow that the unlawfulness of Ochser's arrest was readily apparent to Defendants in light of a facially valid arrest warrant and the surrounding circumstances. It is not clearly established that an arresting officer acting pursuant to a facially valid warrant has the obligation to investigate documentary evidence. We conclude that in light of a facially valid arrest warrant, the unlawfulness of Ochser's arrest was not readily apparent to Defendants.

¶ 18 Next we must determine whether an officer of reasonable competence could disagree whether further investigation of the warrant was required in light of Ochser's statements that he had documentary support evidencing the warrant had been quashed. Whether a reasonable officer could have believed his actions were lawful is a question of law and not one of fact. *Romero v. Kitsap County*, 931 F.2d 624, 628 (9th Cir.1991). In this case, Defendants relied on a facially valid arrest warrant for Ochser. Ochser asserts he informed Defendants that he had a certified copy of a minute entry quashing his warrant, however, "[u]nless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity." *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir.1984).

¶ 19 In this case, it is undisputed that Ochser's warrant was facially valid. Defendants had no knowledge or information, prior to Ochser's assertions the day of his arrest, that the warrant had been previously quashed. The warrant itself had been officially and validly issued in connection with Ochser's prior failure to pay child support. Pursuant to MCSO procedures, the warrant's validity was verified after inclusion on the "Operation Mother's Day 2004" list and was also verified on the very day it was served. Government officials are permitted and trained to rely upon the validity of officially issued documents verified through official channels. *See, e.g.*, *Mitchell v. Aluisi*, 872 F.2d 577, 579–80 (4th Cir.1989) (holding an arrest based on a facially valid warrant did not violate arrestee's due process rights where the sheriff's office had not received notice that the warrant had been cancelled as the arrestee had claimed).

¶ 20 If "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341, 106 S.Ct. 1092 (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). We find that "officers of reasonable competence could disagree" as to whether they were required to investigate further the

---

**5.** In *Harlow*, the Supreme Court defined the limits of qualified immunity to "objective terms."

*Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

warrant's validity in light of Ochser's claims he had a certified copy of the minute entry quashing the warrant. Because reasonable officers could disagree as to whether further investigation was required, Defendants are entitled to qualified immunity. *See Id.*

¶ 21 Ochser cites numerous cases for the proposition that Defendants are not entitled to qualified immunity. We find them distinguishable. In *Torres Ramirez,* the court determined there was evidence from which a jury could determine the defendant officer had sent out a warrant he already knew had been vacated. 898 F.2d at 226. Qualified immunity was not given because it was not objectively reasonable for a government official to process an arrest warrant he knew or should have known had already been vacated. *Id.* at 228. In *Peña–Borrero,* officers arrested a man after he had shown them a physical copy of an executed warrant, particularly, the exact warrant they were purporting to execute. 365 F.3d at 10. Qualified immunity was not extended to defendant officers because the evidence viewed in the light most favorable to the arrestee indicated the officers ignored unambiguous evidence that the warrant was unenforceable as it had already been served. *Id.* at 14. In *Beier v. City of Lewiston,* officers arrested Beier for violating an order of protection relying solely on his ex-wife's statements and without actually looking at the order itself. 354 F.3d 1058, 1062 (9th Cir.2004). The officers were not entitled to qualified immunity in that case because arresting Beier without reading the terms of the order was not something a reasonably competent officer would do under the same circumstances. *Id.* at 1072.

¶ 22 Ochser also cites *Berg v. Alleghany County,* 219 F.3d 261 for the proposition that a facially valid warrant does not provide the officer qualified immunity if "reliance on it is unreasonable in light of the relevant circumstances. Such circumstances include, but are not limited to, other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight." *Id.* at 273.

¶ 23 In *Berg,* an arrest warrant was mistakenly issued for the plaintiff. *Id.* at 266–

67. The warrant was executed by a constable who earned a fee for each person arrested. *Id.* at 267. The plaintiff offered to produce documents that indicated he was no longer on parole, however, the constable refused to look at the documents. *Id.*

¶ 24 *Berg* is distinguishable from this case, because in *Berg,* the constable unreasonably relied on an arrest warrant that was erroneously issued for the wrong person and thus not supported by probable cause. In this case, as previously stated, Defendants reasonably relied on official information regarding the validity of Ochser's warrant and relied on a facially valid warrant. Defendants checked the validity of the warrant prior to executing it. Defendants had no information prior to Ochser's protests that the warrant was invalid. In the face of official confirmation that the warrant was valid, Defendants were not required to investigate protests by Ochser as to his innocence.

¶ 25 Citing cases from United States Circuit Courts for the First and Third Circuit, the dissent concludes that, as of the date of Ochser's arrest, it was "clearly established" that "an arresting officer may not disregard documentary evidence offered by a person named on an arrest warrant that proves that the warrant was invalid." *Infra* ¶ 45. As of the date of Ochser's arrest, however, neither our supreme court nor the Ninth Circuit Court of Appeals has held it unlawful to arrest a person pursuant to a facially valid warrant without first examining documentary evidence offered by the person who is subject to an arrest warrant. As indicated above, we have explained why the cases relied upon by the dissent are distinguishable. As such, Defendants are entitled to qualified immunity.

## CONCLUSION

¶ 26 For the foregoing reasons, we find that the trial court did not err and affirm the order dismissing this case.

CONCURRING: JON W. THOMPSON, Judge.

JOHNSEN, Judge, dissenting.

## FACTS AND PROCEDURAL BACKGROUND

¶ 27 On January 6, 2003, the superior court issued a warrant for Ochser's arrest for violation of a child support order. Roughly 60 days later, on March 13, 2003, the court quashed that warrant. Unfortunately, although the court's minute entry order contained the legend: "FAXED: MCSO," the March 13 order did not make its way into the records of the Maricopa County Sheriff's Office. Before Deputies Funk and Cruz set out to arrest Ochser in Flagstaff the morning of May 5, 2004, they confirmed that Sheriff's Office records showed the outstanding warrant for his arrest. Of course, it would not matter how many times the deputies checked the Sheriff's records; because the order the court had issued more than a year before quashing the arrest warrant was missing from the Sheriff's records, the warrant would continue to show up as valid on those records.

¶ 28 Ochser had thought ahead about how to protect himself against precisely this sort of bureaucratic mishap. Out of an abundance of caution, he had obtained two certified copies of the order quashing the warrant. He carried one in his car; the other he kept in his desk at the Lowell Observatory in Flagstaff. But Ochser was not in his office or his car when the deputies arrived. They waited for him in the parking lot of the observatory and approached him when he pulled up in an observatory van.[6] Over his protests, they handcuffed him, then shackled him and put him in the back of a patrol car.

¶ 29 On summary judgment, we must take as true that after he was handcuffed, Ochser told the deputies that the arrest warrant was no longer valid. In deposition testimony submitted on the cross-motions for summary judgment, Ochser then related:

Q: What did they—what did either one or both of them say when you said it wasn't valid?

A: They said—he said, "We have what we need to bring you in." And I told him that he needed to check.... And I told him that he should go into my office, and in my inbox there is a certified copy of the minute entry where the—or the order actually of where the judge quashes the warrant.

And he said to me, "I don't need to go to your office to find anything. I've got everything I need." [7]

¶ 30 After Ochser protested, Funk left him and Cruz in the parking lot and entered the building. He did not, however, go to Ochser's desk to pick up the certified copy of the order Ochser had told him was there. Instead, Funk used an observatory phone to make at least one telephone call. Funk testified that because Ochser was "quite insistent" that the warrant had been quashed, he called the Sheriff's OIC, which verified "[i]t was a valid warrant." Funk also testified he telephoned a judge's office and spoke to a temporary worker who "had no clue on how to check anything or do anything." (Cruz's account was different; he testified that when Funk returned to the car, he told Cruz he had reached a court clerk who confirmed that the warrant was valid.) [8]

¶ 31 In response to. the deputies' motion for summary judgment, Ochser offered evidence that under these circumstances, if the

---

**6.** According to Ochser, the deputies had their guns drawn when they approached him; Funk denied that he or Cruz had removed their guns from their holsters.

**7.** Funk admitted Ochser told him the warrant had been quashed. He denied, however, that Ochser told him a copy of the order quashing the warrant was in his office. Funk's partner, Cruz, also was asked whether Ochser said he had a copy of the order quashing the arrest warrant on his desk. At first, Cruz responded, "I don't recall that, no." A minute or so later, however, Cruz volunteered, "I do not recall that, but it could be possible."

**8.** Ochser questions whether Funk in fact telephoned OIC. He argues that Ahlquist, the head of OIC, testified that if a deputy called to report that the subject of an arrest warrant was protesting that the warrant had been quashed, she would have searched the court's docket for an order quashing the warrant. In fact, at her deposition, Ahlquist was able to pull up a copy of the order quashing Ochser's arrest warrant in about two minutes. Since OIC did not search the court records in Ochser's case, Ochser argues Funk either did not call OIC or, if he did, he did not let OIC know that Ochser had said the warrant had been quashed.

subject of an arrest warrant informs officers that a copy of an order quashing the warrant is close by, the reasonable course for the officers is to retrieve the order. For example, the deputies' expert witness on law enforcement practices testified that he would agree "that if the jury believes that Mr. Ochser told [Funk and Cruz] 'I've got a copy of the order quashing that warrant sitting in my desk; go get it,' that he should have done that." Funk and Cruz's supervisor at the time likewise agreed that he would want his deputies to take the time to inspect papers proffered by the target of an arrest if they could do so safely.

## DISCUSSION

¶ 32 In reviewing the deputies immunity defense, we first determine whether the deputies violated Ochser's constitutional right to be free of arrest without probable cause. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The majority seems to conclude the arrest constituted a breach of Ochser's rights under the Fourth Amendment. *Supra* ¶ 17. I agree. *See Wilson v. City of Boston,* 421 F.3d 45, 55 (1st Cir.2005) (arrest made on mistaken belief that a warrant had been issued violated Fourth Amendment); *Berg v. County of Allegheny,* 219 F.3d 261, 270 (3d Cir.2000) ("[T]he Supreme Court has made clear that a mistakenly issued or executed warrant cannot provide probable cause for an arrest.") (citing *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)); *State v. Evans,* 177 Ariz. 201, 866 P.2d 869 (1994) (arrest made on warrant that had been quashed was a "warrantless" and "plainly illegal" arrest) *rev'd on other grounds, Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995).

¶ 33 Under *Saucier,* the next question is whether the right that was violated was clearly established at the time. 533 U.S. at 201, 121 S.Ct. 2151. This inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition.... *Id.* The relevant, dispositive inqui-

ry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202, 121 S.Ct. 2151; *see Pearson v. Callahan,* 555 U.S. 223, ——, 129 S.Ct. 808, 822, 172 L.Ed.2d 565 (2009) (collapsing the two analytical steps; outcome "turns on the 'objective legal reasonableness of the [deputies'] action, assessed in light of the legal rules that were clearly established at the time it was taken'") (quoting *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

¶ 34 In the ordinary case, a law enforcement officer reasonably may assume that probable cause supports issuance of an arrest warrant. *Berg,* 219 F.3d at 272. As the Supreme Court has explained in another context:

Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.

*Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).[9] Nevertheless, "an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances." *Berg,* 219 F.3d at 273. The "relevant circumstances" that may render reliance on a warrant unreasonable "include, but are not limited to, other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight." *Id.*

¶ 35 As in this case, the trial court in *Berg* entered summary judgment against a person who brought a civil rights claim after he was arrested pursuant to an invalid warrant. *Id.* at 267–68. The warrant in that case mistakenly was issued for violation of parole. When an officer showed up to make the

---

**9.** As Ochser points out, *Baker* did not concern the validity of an arrest but whether, after incarcerating a suspect, the sheriff had a duty to investigate the suspect's repeated assertions that the wrong person had been arrested. *See Brown v. Byer,* 870 F.2d 975, 978 (5th Cir.1989).

arrest, the plaintiff protested and "offered to produce release documents proving that he was no longer on parole." *Id.* at 267. The arresting officer, however, refused to look at the release documents and instead told the plaintiff to bring them with him to jail. *Id.* The Third Circuit Court of Appeals vacated the order dismissing the plaintiff's claim and remanded for consideration of facts that it held raised "valid questions concerning the reasonableness" of the arresting officer's conduct, including that the warrant was three years old, the documentation the suspect offered to show that he had completed his parole and the "nonviolent nature of the crime." *Id.* at 273–74.

¶ 36 The majority attempts to distinguish *Berg* on the ground that the warrant in that case was not supported by probable cause. *Supra* ¶ 24. But the order that quashed the civil arrest warrant in this case eliminated the legal basis on which the warrant had been issued. Indeed, the universal premise of this variety of false-arrest civil rights claim is that the arrest was not supported by probable cause. *See Wilson,* 421 F.3d at 56 (no probable cause existed for arrest made in mistaken belief that warrant had been issued); *Berg,* 219 F.3d at 270 ("mistakenly issued *or executed* warrant cannot provide probable cause for an arrest") (emphasis added). That is because if there is probable cause for the arrest, absent excessive force or other circumstances not present here, there is no constitutional violation on which to base a claim under 42 U.S.C. § 1983.[10]

¶ 37 Moreover, the fact that the deputies in this case may have called to check on the warrant after Ochser complained does not distinguish this case from *Berg.* As in this case, after the suspect in *Berg* disputed the warrant, the arresting officer telephoned headquarters to confirm the warrant was valid. 219 F.3d at 268. Thus, *Berg* establishes that when a person named in an arrest warrant offers documentation close at hand to support his contention that the warrant is

invalid, the arresting officers may not disregard that documentation simply because a call to headquarters has "proven" that the warrant remains outstanding.

¶ 38 The First Circuit Court of Appeals applied the *Berg* rule in *Peña–Borrero v. Estremeda,* 365 F.3d 7, 9 (1st Cir.2004). Having once been arrested on a valid warrant, the plaintiff in *Peña–Borrero* posted bail and was released. *Id.* Six weeks later, police officers came to his home and arrested him pursuant to the identical warrant. *Id.* at 9–10. The plaintiff told the officers he had a copy of the executed warrant and a bond receipt in the trunk of his car. *Id.* at 10. The officers retrieved the documents from the plaintiff's car, but arrested him anyway and brought him to police headquarters, where he was detained for several hours. *Id.*

¶ 39 The First Circuit concluded the plaintiff's allegation that officers made the arrest "in the face of unambiguous evidence that their warrant was unenforceable" "would support a jury conclusion that defendants acted unreasonably in arresting [him] and taking him into custody." *Id.* at 13–14. "In our view," the court held, "such a seizure could be objectively unreasonable and a violation of appellant's clearly established Fourth Amendment rights." *Id.* at 14. Standing alone, the officers' failure to check the warrant's validity before executing it would not have supported the plaintiff's claim; it was their insistence on proceeding with the arrest after they were confronted with the documents plaintiff offered that reflected "a much more deliberate disregard" for the plaintiff's constitutional rights. *Id.* at 13.

¶ 40 The majority attempts to distinguish *Peña–Borrero* on the ground that in that case the officers arrested the plaintiff even though they had "unambiguous evidence" that the warrant was not valid. *Supra* ¶ 21. But that is Ochser's precise allegation: He contends he told the deputies he had unam-

<hr/>

**10.** The deputies similarly argue that *Berg* is distinguishable because the warrant in that case was mistakenly issued (rather than, in this case, mistakenly executed). But this argument overlooks *Berg*'s observation that probable cause does not exist for a warrant that is "mistakenly issued or executed." 219 F.3d at 270.

biguous proof that the warrant they sought to execute had been quashed. *See, e.g., Detoledo v. County of Suffolk*, 379 F.Supp.2d 138, 145 (D.Mass.2005) (motion to dismiss civil rights claim denied; even if officer had no duty to retrieve other documents from nearby storage locker, officer proceeded with arrest despite having the quash order at hand).

¶ 41 Contrary to the deputies' argument, Ochser's contention is not that Funk and Cruz were obligated to launch an independent investigation into the validity of the warrant. Rather, Ochser contends the deputies should not have brushed aside his offer to provide them with a certified court document proving that the warrant they were trying to execute had been quashed. By the same token, the issue is not, as the majority puts it, whether the deputies acted unreasonably by failing to independently investigate the warrant. *Supra* ¶ 17. Instead, it is whether they acted unreasonably by refusing Ochser's entreaty to examine the order he offered to provide them that had quashed that warrant more than a year before. Under these circumstances, as the court held in *Peña–Borrero*, the plaintiff's "claim of improper arrest arguably required no independent investigation; he did not simply assert a mistake, but also provided substantiation." 365 F.3d at 13.

¶ 42 For the same reason, *Mitchell v. Aluisi*, 872 F.2d 577 (4th Cir.1989), on which the majority relies, is not on point. Defendants in that case arrested the plaintiff over her oral protests that the warrant had been recalled. *Id.* at 578. She did not offer or offer to provide a copy of the order recalling the warrant. *Id.* In contrast, Ochser did more than complain that the arrest warrant was invalid: He informed the deputies that a certified copy of the minute entry quashing the warrant was on his desk.

¶ 43 The majority concludes that after Ochser told Funk and Cruz he had a certified copy of the order quashing his arrest on his desk, reasonable law enforcement officers could disagree "as to whether they were required to investigate further." *Supra* ¶ 20. My view is that to the contrary, reasonable law enforcement officers could not disagree that the deputies should have retrieved and inspected the order Ochser offered that quashed the warrant they were there to execute. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (issue should not be posed "as a broad general proposition" but instead "must be undertaken in light of the specific context of the case"). The deputies do not contend that inspecting the documentation Ochser offered would have required extraordinary effort. Nor do the deputies contend that retrieving the order Ochser offered them would have jeopardized their mission or public safety.[11]

¶ 44 On this record, under the authorities cited above and construing the facts and all inferences as we must in favor of Ochser, I cannot conclude that any reasonable law enforcement officer would decide that Funk and Cruz acted reasonably by rejecting Ochser's request that they inspect the certified copy of the court order he told them was on his desk.[12]

¶ 45 Furthermore, in my view there is no question that it was "clearly established" at the time of the arrest in this case that an arresting officer may not disregard documentary evidence offered by a person named on an arrest warrant that proves the warrant is invalid. *Berg* was decided by a United States Circuit Court of Appeals in 2000; another Circuit Court handed down *Peña–Borrero* in 2004, prior to Ochser's arrest. *Cf. Soto v. Bzdel*, 214 F.Supp.2d 69, 76–77 (D.Mass.2002) (holding that although officers who arrested person after he provided them with documentary evidence that warrant had been recalled would not be charged with

---

11. The undisputed evidence is that a third Sheriff's Office representative (a posse member) was present, and Ochser, whom deputies knew only as a child-support violator, was securely handcuffed and shackled in the back seat of a patrol car.

12. In response to the deputies' motion for summary judgment, Ochser offered testimony by the deputies' expert witness and the deputies' supervisor that it would have been reasonable for the deputies to inspect the document he proffered. *Supra* ¶ 31.

knowing in 1999 they were violating a clearly established right, "[t]his ought not hold true in the future."). On appeal, the deputies have cited no case that rejects or even questions the principle these federal cases established.[13]

¶ 46 Accordingly, I would conclude that under the facts Ochser presented, and "in the light of pre-existing law," the unlawfulness of the deputies' conduct in this case was clear. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir.1992) (issue does not "require a prior case that is 'precisely on all fours on the facts and law involved here'") (citing *Landstrom v. Illinois Dep't of Children & Family Servs.,* 892 F.2d 670, 676 (7th Cir.1990)).

## CONCLUSION

¶ 47 Based on the authorities cited above, because Ochser submitted evidence on which it may be concluded that the deputies knew or should have known that their conduct violated a clearly established constitutional right, I would reverse the judgment and remand for trial.

13. In *Lauer v. Dahlberg,* 717 F.Supp. 612 (N.D.Ill.1989) *aff'd,* 907 F.2d 152 (7th Cir.1990), the court concluded an arresting officer was entitled to disregard an uncertified copy of a warrant recall order. In that case, however, the officer inspected the document proffered by the suspect, and reasonably doubted its authenticity, given that it was not a certified copy. 717 F.Supp. at 614. By contrast, here, of course, Funk and Cruz did not bother to inspect the certified copy of the order to which Ochser directed them.